## O'NEIL ENGINEERING CO. et al. v. FIRST NAT. BANK OF PARIS. (No. 104–2940.)

(Commission of Appeals of Texas, Section B. June 16, 1920.)

1. **Principal and surety 🔑59—Surety on a contractor's bond is charged with knowledge of terms.**

Surety on a contractor's bond is charged with knowledge of all the terms, stipulations, and legal consequences of the contract upon which it became a guarantor.

2. **Assignments 🔑85—Assignee of contractor held entitled to priority over surety.**

Where a construction contract authorized the board of road commissioners to retain 15 per cent. of the monthly estimates, and the surety on the contract was subrogated to and had had assigned to it the rights of the board, the contractor's assignment of the remaining 85 per cent. gave its assignee rights superior to the board and surety so long as the contractor was carrying on the work and not in default.

3. **Assignments 🔑74—Assignee takes only title of the assignor.**

When there is an assignment of a particular fund, the assignee takes the title of the assignor to that which is assigned, but he obtains no greater right in or title to the fund than exists in the assignor.

4. **Assignments 🔑85—Breach having occurred before payment, rights of assignee were inferior to those of surety.**

Where contract for the construction of a road authorized the board of road commissioners to retain 15 per cent. of the monthly estimates, and provided that the remainder should be paid on or before the fourth Monday of the month following that in which the work was performed and the warrant for the work done on the previous month, although approved on the 4th day of the month, had not been delivered on the 8th day of the month, when the contractor defaulted and a bank which had an assignment of warrants to become due demanded payment, held, that the board was warranted in retaining the amount because of default, so rights of the surety to which had been assigned all sums retained, etc., were superior to those of the bank.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by the First National Bank of Paris, Texas, against the O'Neil Engineering Company and others. Judgment adverse to plaintiff was modified and affirmed by the Court of Civil Appeals (176 S. W. 74), and defendants bring error. Judgment of the Court of Civil Appeals reversed, and that of district court affirmed.

James J. Collins and M. W. Townsend, both of Dallas, and Chas. L. Black, of Austin, for plaintiffs in error.

A. P. Park, of Paris, and Brooks, Hart & Woodward, of Austin, for defendant in error.

SADLER, P. J. The statement of the case as given in the opinion by the Court of Civil Appeals is so full and complete that we adopt same as shown in 176 S. W. 74. As aptly stated by Associate Justice Hodges:

"The only errors assigned are those which question the court's legal conclusions from the foregoing facts. To summarize: These facts show conflicting claims to a special fund authorized by law to be disbursed under the order of the board of permanent road commissioners for justice precinct No. 1 of Lamar county. The appellant [defendant in error] claims that fund—or rather so much of it as may be necessary to satisfy its debt against the engineering company—by virtue of parol assignments made before any of the money due upon the contract with the board had been earned by the engineering company. The surety company [Fidelity & Deposit Company of Maryland, and Title Guaranty Insurance Company, acting together] claims this fund upon three different written assignments. The first is referred to as the application agreement made at the time the contract of suretyship was entered into and as a part of the consideration of that contract; the second is another written assignment, dated February 26, 1913; and the third still another agreement made on the 8th day of August, 1913, at the time it took over, or agreed to take over, the contract of the engineering company with the board. The surety company also insists upon its right of subrogation to all of the claims, securities, and demands owned or held by the board against the engineering company at the time the latter defaulted in the performance of its contract.

The question then is, Which of these opposing claims should be given the preference?"

The trial court held that the sureties on the bond of the O'Neil Engineering Company given to the board of road commissioners to insure performance of the road contract were entitled to the fund involved. On appeal, the Court of Civil Appeals held that the bank had a prior right in the fund to the extent of its debt against the engineering company. To this judgment writ of error was granted.

### Opinion.

After a very careful consideration of the able presentation by counsel of the questions involved, we have concluded that the Court of Civil Appeals erred in the disposition made of this case.

[1, 2] In reaching this conclusion, we have recognized the difficulty involved. At the time the contract was entered into between the O'Neil Engineering Company and the board of road commissioners, it was therein specially stipulated that a bond should be given as required by law, guaranteeing performance by the engineering company of the contract, in which it obligated itself, in accordance with the plans and specifications furnished, to construct the roads contemplated. It was further stipulated as a protection to the board that 15 per cent. of each monthly estimate of the work completed should be retained by it until all of the work had been completed, in accordance with the contract. It was stipulated that between the 1st and 10th of each month, the engineer who was acting for the board should make an estimate of the amount of work which had been completed during the previous month; that he should deduct therefrom fifteen per cent. and such other amounts as might be proper to be retained by the board until the completion of the contract; that the remaining portion of the estimate should be paid over to the engineering company for the work which it had completed during the previous month. The contractor could not require payment of this amount before the fourth Monday in the month in which the estimate had been approved.

It may not be amiss to discuss the relationship existing between the board of road commissioners and the engineering company under the contract. The board provided for its protection against default on the part of the engineering company. The retention of 15 per cent. of the monthly estimates and such other deductions as its engineer might make, together with the bond guaranteeing performance, were provided as sufficient to recoup the board for any dereliction by the engineering company. We think that it is clear that this construction of the contract is in consonance with its terms and with the intention on the part of the board. As a guaranty of faithful performance—as an indemnity for its protection—it looked to the retained percentages and deductions by its engineer and the bond required. The engineering company accepted for itself, with the consent and permission of the board, such an amount of each monthly estimate as remained after the deductions had been made by the engineer in charge. This amount may, for convenience, be treated as 85 per cent. of each monthly estimate.

At the end of each month, after the work began, the engineering company, it then being in performance of the contract, was entitled to receive 85 per cent. of each estimate, without any retained claim thereto by the board. This board did not put any restraint upon this 85 per cent. to protect against any future dereliction, failure, or incapacity on the part of the engineering company in the performance of the contract. In the absence of fraud or mistake, when the board approved the estimate submitted by the engineer for any month, the amount of such estimate, the contract then being in performance by the engineering company, was set apart from the general fund to meet the obligation to the contractor at its maturity.

What was the position of the surety or bondsman who sought to indemnify the board against loss or guarantee the faithful execution of the contract by the principal? They were charged with knowledge of all of the terms, stipulations, and legal consequences of the contract upon which they became guarantors. If we treat the contract, which we think proper to do, as being incorporated in and forming a part of the bond, then the surety company occupied exactly the same position in relation to it as that of the principals themselves. The surety company had no greater right in the contract or under it than had the board. It accepted the suretyship with knowledge that a certain per cent. of each monthly estimate for work completed during that month was to become due and payable to and subject to the possession of its principal in the bond without restraint.

An examination of the application for suretyship made by the contractor to the surety companies further confirms the position here taken. The assignment contained in the application had relation to the condition which existed, not at the time of making the contract, but at the time of the breach and failure of performance on the part of the principal. As long as the contractor was carrying out his obligation in performing the terms of his contract, the surety company had no right to arrest or hold for its protection, either under the application assignment or by equitable subrogation, any part of the estimate approved by the board, ordered paid, and subject to the demand of the contract. It entered into its suretyship relying for protection upon the

retained percentage and its faith in the contractor. It reserved no rights against any earned and approved amounts subject to the demand of the contractor prior to breach by him.

This being the situation at the time the assignment was made by the engineering company to the bank, it became the first assignee of that portion of the monthly estimates to which the engineering company would be entitled under its contract with the board as long as the engineering company was in the performance of its contract and until any sums due to the bank covered by the assignment were liquidated.

The second assignment made to the surety company affected only the percentage retained by the board under the original contract, and did not in any wise attach to that portion of any estimate payable to the contractor. The last or third assignment to the surety company, that made on the 8th day of August, 1913, is not material except as it may affect the question of whether or not there was an abandonment of the contract by the engineering company.

What, then, was the status of the fund involved in this litigation on the 4th day of August, 1913? The engineering company was in the proper performance of its contract during the month of July, and had completed such a portion of the work contemplated as, in the judgment of the engineer in charge, entitled it to the sum of $13,347.97. All proper deductions had been made in behalf of the board under the contract. On this date this fund had charged against it the indebtedness due by the engineering company to the bank. There was no other demand or claim against it. All claims of the board were satisfied in the deduction made by the engineer. This fund was resting under no obligation either to the board or to any other party as an assignee, by contract or by equitable subrogation, under the conditions as they existed on the 4th day of August, 1913. The only party who had any claim in this fund was the engineering company, subject, alone, to the assignment which it had made to the bank. The board of commissioners, on the submission to it of the estimate by the engineer, duly and legally approved the same and ordered the sum found due by him for the previous month's work to be paid to the engineering company, and a warrant was drawn on the special fund in its favor for this amount.

[3, 4] At the time of this order the engineering company was carrying out and performing its contract. There had been no breath of suspicion of failure to perform on the part of the contractor. There had been no intimation of the prospective abandonment of the contract or of an inability to complete it. The board justly determined in the exercise of its power that it had no claim on this amount, and that it was owing to the contractor. Nothing had occurred giving rise to any question as to the legal right of the contractor to the fund. The surety company was not asserting any claim against it, and nothing had occurred which gave it the right to assert a claim. If on that day the contractor had the right to demand the payment, and it had made the demand, there is nothing in the record which gives to any one the right to have demurred, or which would have given to the board the power to have refused payment to the contractor, or to the bank as its assignee. It appears, however, that for several days no demand was made for the delivery of the warrant or payment. On the 8th of the month the bank, as assignee, demanded the delivery of the warrant to it, and gave notice to the board of its assignment. Subsequent to this demand, but on the same day, came into existence the transactions which bring about this litigation. The president of the engineering company appeared before the board, and notified it that his company could not carry out the contract and that it had assigned the same, together with all rights under it, to the surety companies; who were to carry out and complete the work in accordance with the terms of the contract. On indemnification by the surety company, the board delivered the warrant to it.

If the surety company had any right in this fund, the power to exercise that right arose subsequent to the 4th day of August, 1913. The bank held, on that date, under the then existing conditions, the superior right in this fund to the amount of its claim against the contractor, except as that right may have been affected by the subsequent conduct of the engineering company.

The determination of the effect of the transactions which took place on the 8th day of August, 1913, has been fraught with great difficulty. We cannot agree with the Court of Civil Appeals that the engineering company did not abandon work and make default under the contract. It did assign all of its rights under the contract to its surety and all amounts then due thereunder by the board. This assignment, however, was superinduced by the fact of inability to perform the obligations resting upon the engineering company. We are impressed that the question is squarely before us to be decided in the light of effect thereon of abandonment of the contract by the engineering company, and that we will have to deal with the parties and their rights as such abandonment affects them.

If the contract had been abandoned prior to the approval of the estimate for July and the order for payment of that portion to which the engineering company was entitled, under the decision of the engineer in charge for the board, then, in a suit to compel ap-

proval and payment, the board could have successfully asserted its right to await the final completion of the work contemplated. This right existed in the board in virtue of the relation existing between it and the contractor with regard to the subject-matter of the contract.

Notwithstanding the order approving the estimate and directing its payment to the contractor, should he have abandoned his contract at a time when there was no existing right in an assignee, the board could have defeated a recovery by the contractor until final completion, and, so long as no right existed in the contractor to demand payment and require performance of the order of the board, the assignee of the contractor could exercise no greater right than he. We are thus brought to the question of what effect upon these rights of the board the previous assignment to the bank had.

It appears to be settled that when there is an assignment of a particular fund the assignee takes the title of the assignor to that which is assigned, but he obtains no greater right in or to the fund than exists in the assignor.

The trial court and the Court of Civil Appeals seem to proceed to a decision upon the evident hypothesis that at the time the bank demanded payment (August 8th), the contractor then had the unqualified right to demand payment, in that the amount ordered paid was a matured obligation. These courts evidently overlooked that provision of the contract with controlled the maturity of the payment. In the clause providing for the estimates and deductions and directing the manner of payment, it is provided that the board, or the engineer acting for the board, "shall pay the remainder of such estimate to the contractor * * * at the office of the county auditor * * * on or before the fourth Monday of each month for the work of the preceding month." Under the terms of the contract, the board might make the payment at any time after approval of the estimate, but the contractor could not demand it as a matured and absolute right vested in him until the fourth Monday in August.

On the 8th day of August the parties stood in this relation: · The board had determined that it was due for the previous month's work the amount of the estimate, and that the same should be paid, but the payment was reserved and the contractor could not demand that it be made. The option was with the board to pay then or to abide its time under the maturity clause of the contract. The amount due and owing was determined, but it was still an unmatured indebtedness. The definite amount of $13,347.-97 became fixed as due by the board to the contractor, subject to payment at maturity or at any time prior to maturity, at the option of the board. With the funds thus impressed, the contractor gave notice of his default, his inability to further perform, and, as a consequence, of abandonment, and that he had called upon the sureties to complete his original obligation—their ultimate contract.

The assignment in the application for the suretyship bond was of all amounts which might be due the contractor by the board at the time of the abandonment of the contract by the engineering company. This assignment antedated that made to the bank. It stood ready at all times, for the protection of the surety, to take hold of any money which the board owed to the contractor at the time of the abandonment of the contract. The amount of the estimate in question being a debt due, but not matured, at the time of the abandonment, was immediately fastened upon by the original assignment to the surety company, to the exclusion of any other assignment subsequently given. The assignment to the bank attached to this fund, subject to the stipulations contained in the contract, and subject to the rights of the parties under that contract as they might arise in law.

The rights of the board to retain this estimate against the contractor became fixed upon his abandonment of the contract. This right existed from the inception of the construction contract; the surety company was in equity subrogated to the then existing rights of the board. As the surety accepted its responsibility to, and did proceed in, the performance of the contract, it was vested, both under the application assignment and by subrogation, to a prior right in the fund to that of the bank. The bank's assignment postdated the application assignment, and postdated the equitable rights existing in the board and subject to attach to the fund. Hess & Skinner Engineering Co. v. Turney (Sup.) 216 S. W. 621. What occurred on August 8th gave rise to the rights of the board and of the surety company which related back to, and dated from, the inception of the construction contract.

We are of opinion that the surety company obtained the prior right in this fund, and that the Court of Civil Appeals erred in not so holding.

The judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

HAWKINS and GREENWOOD, JJ. We approve the judgment recommended in this case.

PHILLIPS, C. J., not sitting.