EMPLOYERS CASUALTY COMPANY v. COUNTY OF ROCKWALL ET AL.

No. 5054.   Decided January 21, 1931.
Rehearing Granted in part and Overruled in part May 20, 1931.
(35 S. W., 2d Series, 690.)
(38 S. W., 2d Series, 1098.)

442

*Lawther, Pope, Leachman & Lawther* and *Leachman & Gardere,* for plaintiffs in error.

The surety was entitled to a judgment for the balance due in the hands of the county under well established principals of law and equity, as follows:

(1) The laborers and materialmen whose claim the surety paid in completing the contract, had their claim not been paid by the surety, would have had a prior right and a preferred claim or lien on the balance due in the hands of the county, to secure the payment of their respective claims. (Southern Surety Company v. Kline, 278 S. W., 527).

(2) The surety in paying these claims for labor and material and in causing said road contract to be completed was discharging an obligation resting upon it by reason of its having executed said bond.

(3) The surety having discharged the claims for labor and material, for which it was responsible under its bond, it was subrogated to the

rights of the laborers and materialmen in and to the balance due in the hands of the county, and was entitled to be reimbursed and indemnified out of said balance due; and it had a special equity and an equitable lien in and to said balance due prior and preferred to the rights of any assignee of the contractors. (Prairie State National Bank v. U. S., 164 U. S., 227; Columbia Digger Co. v. Rector, 215 Fed., 621; First National Bank v. City, 114 Fed., 529; Henningson v. U. S. F. & G., 143 Ed., 810-208 U. S., 404; Coutou Trust Co. v. Mase. Bonding Co., 1 Fed. (2d) 136).

(4)   Balance due in the hands of the county was a trust fund dedicated first to the payment of all outstanding valid claims for labor and material and secondly to the reimbursement and indemnity of the surety, which had paid valid claims to discharge its obligation under said bond. (Ann. Cas., 1915B, 1276, note; Denham v. Pioneer Sand & Gravel Co., 176 Pac., 333; Schwartz v. Gerhardt, 75 Pac., 689; Aetna Casualty & Surety Co. v. Skagitt County, 207 S. W., 237; Southern Surety Co. v. Klein, 278 S. W., 527; Columbia Digger Co. v. Rector et al., 215 Fed., 618; Columbia Digger Co. v. Sparks, 227 Fed., 780; Alexander Lbr. Co. v. Aetna Liability Co., 129 N. E., 871; Wells v. City of Philadelphia, 112 Atl., 867; Globe Indemnity Co. v. United Rys. Co., 272 Fed., 607; Cox v. New England Equitable Ins. Co., 247 Fed., 955).

(5)   The surety was further entitled to said balance due, not only because it was subrogated in equity to the rights of the laborers and materialmen whose claims it had paid and extinguished, and not only because it, as surety, had a special equity and an equitable lien in and to said balance for its indemnity, but also because it, as surety, had a prior, equitable assignment in writing, signed by said contractors, in which all of the same due and to become due under said contract were assigned to the surety as its property.   This equitable assignment was dated in September of 1924, and there were no equitable assignments that were prior in point of time to it; it being the elder, it should have prevailed and the surety should have recovered said balance due.   (Hess & Skinner Eng. Co. v. Turner (Sup. Ct.), 216 S. W., 621; Southern Surety Co. v. Guaranty State Bank of DeLeon, 275 S. W., 436; Rotsky v. Kelsay Lbr. Co. et al., 228 S. W., 558; Wilson v. Sherwin-Williams Co., 217 S. W., 372).

(6)   The bank, to whom the court by an instructed verdict awarded said balance due in the hands of the county, was a mere lender of money, and as such could not claim a right to recover the balance due as a materialman; neither could it claim by subrogation the rights of a materialman.   (Caylord v. Louchridge, 50 Texas, 573; Lion Bonding & Surety Co. v. Bank, 194 S. W., 1012; Hess & Skinner Eng. Co. v. Turner, 216 S. W., 621).

(7)   The bank's only right to said fund was by reason of the order executed by the contractors and delivered to the county under date of

January 11, 1925, which was subsequent in point of time to the equitable assignment held by the surety, dated in September of 1924, and therefore the surety having the elder assignment was entitled to the fund. (Hess & Skinner Eng. Co. v. Turner (Sup. Ct.), 216 S. W., 621; Southern Surety Co. v. Guaranty State Bank of De Leon, 275 S.W., 436; Rotsky v. Kelsay Lbr. Co. et al., 228 S. W., 558; Wilson v. Sherwin-Williams Co., 217 S. W., 372).

It will be seen by an examination of the itemized account of the Snow Motor Company that the same consists of oil, gasoline, automobile parts, purchase price on an automobile truck, light bulbs, repair work on automobiles, automobile tires, tubes, parts, repairs on tires and tubes, wrenches, electric batteries, timing gears, light switches, vulcanizing, pump hose, truck parts, radiator parts, automobile accessories, etc. None of these items constitute either labor performed nor material furnished in the performance of the contract for the construction of a paved road. It is plain and self-evident that none of these items are materials used to pave a concrete road. None of them become a part of the road when completed; they represent equipment and supplies which any contractor necessarily must own and have as a part of his equipment. Said items not being labor or materials should not have been allowed, and the court erred in instructing the jury to find against this surety on said bond for said items and further erred in rendering judgment against said surety for same. Central Trust Co. v. Texas, et. Ry. Co., 23 Fed., 703; Waters Pierce Oil Co. et al. v. Mexican Trust Co. et al., 99 S. W., 212; City of Alpena v. Title Guaranty & Surety Co. (Mich.), 123 N. W., 1126; City of Alpena v. Murray Co., 123 N. W., 1126; U. S. F. & G. Co. v. Henderson County et al., 253 S. W., 835; May et al. v. McConnell, 14 So., 768.

*Wallace & Taylor, Mack L. Vickrey, C. G. Miller* and *Thos. R. Bond,* for defendants in error.

From the beginning the courts of Texas have uniformly held that groceries consumed by employees, where necessity was shown, and feed for the mules, were "materials" furnished for which a recovery could be had upon the bond. Is there a distinction to be drawn as against gasoline and oil, the food consumed by the engines furnishing the power and labor *in substitution for that of the men and the mules?* But perhaps a more exact comparison would be found in the case of wood or coal furnished as fuel for an engine used in the construction of a public work. The weight of authority in all the courts allow a recovery for coal. The Court of Civil Appeals in the case of Hess & Skinner v. Turney allowed a recovery on the bond for wood used as fuel in an engine, stating in disposing of this question, "We think these items were material used 'in the prosecution of the work provided for it in the contract' ", and the Supreme Court, reviewing this decision, affirmed the same, as shown by

their opinion found in 216 S. W., 622. Therefore, in the light of the authorities and the reason of the thing, the gasoline and oil consumed by the trucks, cars, and concrete mixers used on the job was material furnished in the performance of the contract or incident thereto, and for which a recovery on the bond should be allowed. In addition, appellant now practically admits its liability for this part of appellee's claim.

On the question of whether labor performed in the repair of the contractors' machinery or equipment is labor performed in the performance of the contract or not, we find the decisions of the Courts of Civil Appeals of Texas to be conflicting. The Beaumont court, in the United States Fidelity & Guaranty Company v. Henderson County case, cited by the appellant in his brief, apparently holds that a blacksmith is not entitled to recover against the surety on the bond for labor expended by him in the repair of the tools and equipment of the contractor used on the job. The court based this decision upon the rule that no recovery can be had upon the bond for machinery and equipment sold to the contractor and upon the theory that "the contract pre-supposes that the contractor has and will furnish upon his own account the necessary tools, implements and appliances with which to perform the work." We agree with the court that this rule and theory is sound, but we disagree in the court's conclusion that "the logical consequence of this holding is that repairs put upon such machinery do not come within the protection of the law." It could as well be contended that an engineer, mechanic, or laborer who was employed on such a job for the sole purpose of looking after all the machinery and keeping it in smooth working order, repair or adjustment, was not rendering such labor as would entitle him to look to the surety for his daily wages.

A contrary view was expressed by the Austin Court of Civil Appeals in the case of Hess & Skinner v. Turney, wherein recovery was allowed for labor expended in the repairing of a certain engine used in the construction of the work.

This reasoning will apply as well to the use of motor trucks on a road construction as to an engine used in the construction of the bridge, since the labor performed by the trucks was as essential as if it had been done by the muscular strength of those who performed manual labor.

Next in our tabulation we find the sum of $208.91 to be due this intervenor for repair parts furnished to the contractors and placed upon their trucks and car used in the construction of the work. We are unable to obtain any direct assistance from the Texas authorities on this point, and so must approach it as an original proposition. It should be borne in mind by the court that these items were not original articles purchased by the contractors at the beginning of the job, but were repairs or replacement parts, the installation of which was made necessary by the wear and tear on the machines. They did not add anything to the value of the

permanent equipment of the contractors when installed, but were merely for the purpose of keeping it in a usable condition, that the performance of the contract might not be interrupted. And since the use of the trucks for transporting materials was essential to the performance of the contract, it was necessary that these repairs be made. We think the language of the Court of Civil Appeals in the Hess & Skinner v. Turney case and as approved by the Supreme Court.'

"It was none the less in the prosecution of the work, because it was done with a steam engine. * * * In order for the engine to do the work it was necessary to keep it in repair" is broad enough to include such items. If the labor in the repair of the engine or truck is labor in the performance of a contract, as it is now established to be by our Supreme Court, then would it not logically follow that the small repair parts so installed would be material furnished in the performance of the contract, or at least be material furnished incidental to the performance of the contract?

Though the weight of authorities on the construction of bonds *of the kind and character* heretofore construed by the courts does not allow a recovery for the general equipment of the contractor, and in some instances for repair parts furnished for the same, yet a sensible distinction is drawn by the United States Court in the case of American Surety Co. v. Lawrenceville cited herein, which applied the general rule as to the recovery for a dredge sold the contractors, but in this connection further held:

"It (the construction in question) has, however, no necessary relation to repairs of an incidental and comparatively inexpensive character made on the plant during the progress of the work, representing only the ordinary wear and tear or the equivalent thereof. Such repairs under some circumstances come within the purview of the statute."

We feel that this authority being directly in point, should control.

MR. COMMISSIONER LEDDY delivered the opinion of the court.

Rockwall county entered into a construction contract with Kirk & Patterson, a co-partnership, for the building of a stretch of concrete road for the performance of which contract Kirk & Patterson executed a bond in the sum of $35,000 with the Employers Casualty Company as surety. The contractors defaulted in the performance of their contract and the work was taken over by the surety company. At the time of the execution of the bond, and upon the taking over of the work by the surety company as well, the contractors made an assignment to the surety company of all of the deferred payments and retained percentages and any and all monies and properties due and payable to them at the time of any breach or default in the contract or cessation of work thereunder "or that may thereafter at any time become due and payable" to them on account of said contract.

The surety company completed the contract to the satisfaction of the county, at which time there remained in the hands of Rockwall county, as part of the retained percentages due on the contract, $3,861.85, to recover which sum the surety company instituted its suit. The Farmers' National Bank of Rockwall claimed the entire fund under an assignment from Kirk & Patterson, made subsequent to the assignment to the surety company, and Paul Snow, the McDonald Hardware Company and J. H. Smith, each claiming as a material man by suit or intervention sought a recovery accordingly. The suits were consolidated and tried to a jury; an instructed verdict was returned in favor of Farmers National Bank of Rockwall for the balance due on the contract in the hands of the county, less $500 attorneys' fees allowed to the county in favor of the Snow Motor Company against the contractors and the surety company for the sum of $914.47, in favor of Rockwall county for $500 attorneys' fees, in favor of McDonald Hardware Company against the contractors in the sum of $1,134.09, and against the Surety Company for the sum of $25, and in favor of the surety company against the contractors in the sum of $6,175.20. On appeal, the Court of Civil Appeals affirmed the judgment in favor of the bank and Snow, but reversed the same as to the hardware company and Smith and as to the county's recovery of attorneys' fees and remanded the cause. 300 S. W., 148.

The bond executed by the surety company acknowledges liability "to all persons who may perform labor or furnish materials on such contract and agreement, or in any manner incident to the performance thereof", and to "pay all subcontractors, workmen, laborers, mechanics and furnishers of material in full for all work done, labor performed and material furnished on the performance of said contract and agreement or in any manner incident to the performance thereof."

The Farmers National Bank insists it was entitled to a judgment against the surety company upon the theory that it stood in the position of a laborer and furnisher of material within the terms of the bond because it loaned the contractors money on their note with the agreement and understanding that the proceeds of such loan would be used by the contractors to discharge bills for labor and material incurred in the performance of the contract. There is no pretense that at the time the bank made the loan to the contractors there was any assignment, or agreement for assignment, to the bank by laborers and materialmen whose bills were to be paid out of said funds, the only assignment claimed by the bank being the one executed by the contractors.

The identical question here presented was decided adversely to the bank's contention by the Supreme Court in Hess & Skinner Eng. Co. v. Turney, 110 Texas, 148, 216 S. W., 621, 623, in which it was determined that a bank lending money to a contractor to be used for the payment of labor performed and material furnished on construction work

did not become subrogated to the rights of the laborers and materialmen so as to be protected by the bond. See also Gaylord v. Loughridge, 50 Texas, 577; Lion Bonding & Surety Company v. Bank (Texas Civ. App.), 194 S. W., 1012.

The bank further contends that under the assignment executed to it by the contractors it is entitled to the funds in the hands of the county as against the claim of the surety company. We think the surety company's right to such funds is superior to that of the bank, as it appears the former took over the construction work, upon default of the contractor, and fully performed all of the obligations of the contract. By reason of such fact it became entitled, under the assignment made by the contractors in their application for the bond, as well as by subrogation, to the retained funds in the possession of the county. Hess & Skinner Eng. Co. v. Turney, supra; O'Neil Engineering Co. v. First Natl. Bank (Texas Com. App.), 222 S. W., 1091; Southern Surety Co. v. Klein (Texas Civ. App.), 278 S. W., 527; Prairie State Natl. Bank v. U. S., 164 U. S., 227; Columbia Digger Co. v. Rector, 215 Fed., 621; Maryland Casualty Co. v. Washington Natl Bank et al., 159 Pac. 689.

In this connection the bank asserts that the surety company is not entitled to claim any rights on its application assignment, as the same was only operative in the event the contractors abandoned or defaulted in the performance of their contract. In view of the fact the trial court gave a peremptory instruction we must be able to say that the evidence shows conclusively, as a matter of law, that the contractors abandoned or made default in their contract with the county before we can hold the assignment held by the surety company from the contractors became effective.

It was shown without dispute that the contractors allowed their bills for labor and material in the performance of their contract to go unpaid in violation of the terms thereof, informing the surety company that they were unable financially to proceed further with the performance of the work and demanding that it take over the job which it did and completed the same to the satisfaction of the county.

We have no difficulty in reaching the conclusion that the evidence established, as a matter of law, there was an abandonment or default on the part of the contractors. Their acts and conduct constituted a clear-cut default, justifying the surety company in making the effort to minimize its loss by assuming performance of the contract. 6 R. C. L., 1024; 13 C. J., 651.

The surety company challenges the correctness of the action of the trial court in peremptorily instructing the jury to return a verdict against it in favor of the Snow Motor Company for the full amount of its account on the ground that none of the items constituting said account were for labor and material furnished the contractors within the purview of the bond.

This contention must be sustained in part, as items aggregating $491.40 were for automobile parts, tires and accessories used on equipment belonging to the contractors. None of such articles constitutes materials furnished within the terms of the bond (Hess & Skinner v. Turney, cited supra), it being the duty of the contractors to provide their own equipment.

The balance of the account of the Snow Motor Company was made up of two items, one for oil and gasoline furnished the contractors for operating automobiles, trucks and concrete mixers, used in the construction work for the county. The other consisted of labor performed in necessary repair work by the auto mechanics employed by the motor company on automobiles and trucks used in the performance of the work by the contractors.

The question as to whether the surety company is liable for the above two items of the motor company's account under the terms of its bond is foreclosed by the decision of the Supreme Court in Hess & Skinner Eng. Co. v. Turney, heretofore cited. The Court of Civil Appeals in that case sustained a recovery against a surety on a similar bond for ordinary repairs on the contractor's equipment used in performing the contract, as well as for fuel furnished for the operation of an engine used in such work. When the case was finally decided by the Supreme Court it did not discuss the correctness of the allowance of these items as labor and material within the terms of the bond. At the concluding portion of its opinion, however, this language was used: "The remaining assignments complain of rulings in which we find no error." An examination of the record of the case then before the court shows that the surety company presented and urged in its application for writ of error assignments complaining of the allowance of said items as not being labor and material within the purview of the bond. It also appears that the surety company vigorously presented the same contention in its motion for rehearing in the Supreme Court, which was overruled. The identical question before us was therefore necessarily decided adversely to the surety company's present contention.

The surety company has not presented any assignment pointing out wherein the judgment against it in favor of the McDonald Hardware Company for $25 was not a proper one, hence such judgment will not be disturbed.

The defendant in error Smith was denied the right to intervene in the consolidated suit, and the Court of Civil Appeals reversed that part of the judgment. The pendency of another suit by Smith in the county court upon the claim made the basis of his intervention was not a sufficient ground for denying him the right of intervention in this case, as the statute requires various claimants under the surety bond to litigate their claims in one suit. Article 5164, R. S., 1925.

In this character of action the penalty of the bond, which represents the potential liability of the surety, determines the jurisdiction. American Surety Co. v. Faust, 272 S. W., 446 (Com. App.). The county court therefore had no jurisdiction of the suit brought by Smith against the surety company, hence the pendency of such action was in no way a bar to Smith's right to intervene and prosecute his claim against the surety on the bond in the only forum authorized to adjudicate the same.

The surety company also challenges the right of Rockwall county to be allowed $500 out of the fund deposited in court as attorneys' fees for filing its bill of interpleader. The county was entitled to maintain an interpleader suit if there existed a reasonable doubt, either of fact or law, as to which of the conflicting claimants was entitled to receive payment of the funds held by it. Greenwall v. Ligon (Texas Com. App.), 14 S. W. (2d) 829; Wright v. Grand Lodge K. P. (Texas Civ. App.), 173 S. W., 270, 271; Nixon v. Malone (Texas Civ. App.), 95 S. W., 577; Melton v. American Surety Co. (Texas Civ. App.), 240 S. W., 574, 575; Williams v. Simon (Texas Civ. App.), 235 S. W., 257.

In view of the claim being asserted by Farmers' National Bank under an assignment from the contractors, and of numerous other claimants as furnishers of labor and material, all asserting some right to the funds held by the county, we are not prepared to say the county was not justified in entertaining a reasonable doubt, both of law and fact as to whether all of this fund could with safety be paid to the surety company.

Furnishers of labor and material are given a lien upon such funds (Vernon's Ann. Civ. St., arts. 5472a and 5472b), and it appears that some of the claimants had served the county with notice for the evident purpose of fixing the statutory lien. The validity of these claims against the fund was necessarily dependent upon issues of fact as to whether the claimants had furnished labor and material for the construction work to entitle them to a lien against the fund for the amount claimed. The county did not rest under the duty of attempting to settle such questions of fact, its only safe course being to file its pleading in court admitting it held the balance due under the road contract and asking that the conflicting claimants be required to establish the validity of their claims.

The writer acknowledges valuable aid and assistance received in the preparation of this opinion from the opinions heretofore written by Judges Speer and Critz when this case was before the Commissions.

The judgment of the district court and of the Court of Civil Appeals will be reversed in part, reformed in part, undisturbed in part, and judgment shall be entered as follows: The Farmers National Bank shall take nothing in its claim against Rockwall county or the Employers Casualty Company, and shall pay one-half of the costs incurred in the trial court; the Employers Casualty Company is entitled to recover against Rockwall county for the sum of $3,361.85, being the balance due by it after

deducting the $500 attorneys' fees allowed; the fund deposited by the county shall be paid to said company in full satisfaction of its judgment against said county; that the defendant in error, Paul Snow, recover of the Employers Casualty Company the sum of $523.07, with interest thereon at the rate of 6% per annum from June 7, 1926; together with all costs of the trial court; that as to defendant in error Smith the cause be remanded to the trial court for trial against the makers of the bond, including plaintiff in error; that judgment in favor of plaintiff in error against D. S. Kirk, J. R. Patterson, and J. G. Braddock be reformed so as to reduce the recovery awarded by the trial court against them to the sum of $2,813.35, with 6% interest thereon from June 7, 1926, together with all costs of the trial court; that one-half the costs of the trial court be awarded against the Employers Casualty Company; costs on appeal will be equally divided between Paul Snow and the Farmers National Bank; that in all other respects and as to the other parties the judgment of the trial court is not disturbed.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.

### ON MOTION FOR REHEARING.

The motion for rehearing of the Employers Casualty Company points out an error in the calculation as to the amount of recovery awarded to Paul Snow, the correct amount being $423.07 instead of $523.07. A careful consideration of the remaining grounds of the motion has not convinced us that the matters complained of were not correctly disposed of in our original opinion.

In the motion of defendant in error McDonald Hardware Company it is insisted that it was entitled to recover against the bonding company upon its allegation and proof that upon default of the contractor the bonding company, in taking over the work. converted all the equipment which it had sold the contractor, used the same in completing the work, and thereafter disposed of it.

Inasmuch as the undisputed evidence showed that this equipment belonged to the contractors at the time of its alleged conversion, the hardware company was not entitled to recover for such conversion, as the cause of action therefor would exist in favor of the contractor and not the hardware company.

The motion of the Employers Casualty Company is granted to the extent that the judgment is reformed so as to reduce the recovery awarded Paul Snow to the sum of $423.07. In all other respects both motions for rehearing are overruled.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.