TRINITY UNIVERSAL INSURANCE COMPANY, Appellant,

v.

BELLMEAD STATE BANK OF WACO, Texas, Appellee.

No. 16604.

Court of Civil Appeals of Texas.

Dallas.

Oct. 29, 1965.

Rehearing Denied Nov. 19, 1965.

Brundidge, Fountain, Elliott & Churchill, L. E. Elliott, Dallas, for appellant.

John B. McNamara, Jr., Waco, for appellee.

WILLIAMS, Justice.

Appellant Trinity Universal Insurance Company, also referred to as Surety, appeals from a summary judgment of the District Court of Hunt County awarding appellee Bellmead State Bank of Waco, Texas, also referred to as Garnishor, the sum of $24,966.84 which had been tendered into court by Farmers Electric Cooperative, Inc., referred to as Cooperative, and being the balance of the proceeds of a contract for the construction of a building which Marble Construction Company, Inc., as contractor, agreed to construct for Cooperative, and for the performance of which Trinity Universal Insurance Company bound itself as surety. Bellmead Bank claimed that as a garnishor its right to the fund was superior to the rights of the Surety. The district court, in sustaining appellee's motion for summary judgment, and in overruling appellant's motion for summary judgment, found that appellant had failed to secure a protected assignment pursuant to Art. 260–1, Vernon's Ann. Revised Civil Statutes of Texas, and that appellee, as Garnishor, was entitled to the funds.

Appellant, in its points of error, contends that the trial court erred in holding that Art. 260–1, V.A.C.S., operated to nullify Surety's rights as subrogee to enforce the contractual provisions of the construction contract. The facts are stipulated by the parties, as follows:

"1.

"On or about July 3, 1962, Marble Construction Company, Inc., executed and delivered to Surety an application for a surety bond, conditioned for the performance of a contract for the construction of a building for FARMERS ELECTRIC COOPERATIVE, INC., Garnishee, a copy of which application is attached to the claim of Surety, identified as Exhibit 'A' and made a part hereof.

"2.

"Pursuant to said application, Surety on or about July 3, 1962, executed and delivered to FARMERS ELECTRIC COOPERATIVE, INC., Garnishee, its contractor's bond, a true copy of which is attached to the claim

of Surety, heretofore filed herein, identified as Exhibit 'B' and made a part hereof, whereby, Surety became Surety for Marble Construction Company, Inc. for the construction work described in a copy of said contract, attached to the claim of Surety and identified as Exhibit 'C' and made a part hereof.

"3.

"Thereafter, and on or about the 16th day of April, 1963, said Marble Construction Company, Inc. became financially unable to proceed further in the performance of the contract. It then owed for labor and material used on said project in excess of $25,000.00 and had but $7,000.00 available for payment thereof and for completion of said project. Contractor turned over to Trinity Universal said $7,000.00 and Trinity Universal agreed that in carrying out its obligations under the bond it would assume responsibility for the completion of said contract. But, because contractor did not desire to publicize its financial responsibility, it was agreed that contractor would continue in the management of the work and would issue its checks to all intents and purposes as though financially able to do so; and that as checks were issued by contractor Trinity Universal would deposit in the account of said contractor in the First National Bank in Dallas, sums of money to cover the checks drawn by Marble Construction Company, Inc. as payments for labor and materials used in the prosecution of said work.

"4.

"Pursuant to such arrangement, Trinity Universal advanced as completion costs of said contract and in payment of materials used in the prosecution of the work the sum of $102,112.-98.

"5.

"As a part of the transactions aforesaid, contractor delivered to Surety its written directions addressed to Farmers Electric Cooperative, Inc., dated April 19, 1963, a copy of which is attached to Surety's claim, heretofore filed herein and identified as Exhibit 'D'. In response thereto, said Cooperative, by its attorney, Don Hayter, replied by letter of April 26, 1963, a copy of which is attached to Surety's claim, heretofore filed herein and identified as Exhibit 'E'. Subsequent thereto, said Cooperative paid to Surety, the following amounts due for work and materials furnished to Trinity Universal pursuant to the foregoing arrangement, to wit:

| | |
|---|---|
| May 20, 1963 | $ 7,859.70 |
| July 24, 1963 | 13,675.50 |
| For a total of | $ 21,535.20 |

That after application of said sums and the $7,000.00 delivered to Surety by contractor, Surety's advances for construction costs still unpaid is the sum of $80,577.78.

"6.

"The fund tendered into Court by FARMERS ELECTRIC COOPERATIVE, INC. represents the retained percentages due under and by virtue of the contract identified as Exhibit 'C'.

"7.

"That on the 2nd day of December, 1963, Bank recovered judgment against Marble Construction Company, Inc. in the 74th District Court of McLennan County, Texas in Cause No. 31,655 on the docket of said Court for the total sum of $53,469.75, together with interest thereon from said date until paid at the rate of six per cent (6%) per

annum, together with $20.90 costs of suit; That said judgment is still unsatisfied and Bank is the present legal and equitable owner and holder of said judgment and of said judgment lien.

## "8.

"That on the 5th day of December, 1963, a Writ of Garnishment was served on FARMERS ELECTRIC COOPERATIVE, INC. by Bank herein; That thereafter, on the 20th day of December, 1963, FARMERS ELECTRIC COOPERATIVE, INC., Garnishee, filed its answer to said Writ of Garnishment in which said Garnishee set out that at the time said Writ of Garnishment was served upon it and at the time of filing its answer that it had in its possession approximately $25,966.84 as the balance due on a certain contract between FARMERS ELECTRIC COOPERATIVE, INC. and Marble Construction Company, Inc. for the construction of a structure known as Headquarters Building, Farmers Electric Cooperative, Inc., designated as Project Tex-67, Raines-Rockwall.

## "9.

"That thereafter, Bank filed its Controverting Affidavit transversing the Answer of said Garnishee.

## "10.

"That the occasion for the difference in the sum of $25,966.84 set out in the Answer of FARMERS ELECTRIC COOPERATIVE, INC., Garnishee, to the Writ of Garnishment by Bank, and the sum of $25,616.84 paid into the Registry of this Court by said Garnishee is the result of the sum of $350.00 attorney's fees allowed to Garnishee's attorney for filing the Answer to said Writ of Garnishment."

Material portions of the construction contract which is made a part of the stipulations are as follows:

"Art. III, page 10.

"Section 1. Payments to Bidder:

"(a) On or before the fifteenth (15th) day of each Calendar Month, the Owner shall make partial payment to the Bidder for construction accomplished during the preceding Calendar Month on the basis of estimates thereof certified to by the Bidder and approved by the Architect solely for the purposes of payment; provided, however, that such approval by the Architect shall not be deemed approval of the workmanship or materials; and provided further, that in estimating the amount of construction accomplished, consideration shall be given only to equipment or materials incorporated into the Project. Only ninety (90) percent of each such estimate approved during the construction of the Project shall be paid by the Owner to the Bidder prior to Completion of Construction.

"(e) No payments shall be due while the Bidder is in default in respect of any of the provisions of this Proposal, and the Owner may withhold from the Bidder the amount of any claim by a third party against either the Bidder or the Owner based upon an alleged failure of the Bidder to perform the work hereunder in accordance with the provisions of this Proposal.

"Section 2. Release of Liens: Upon completion of Construction of the Project, but prior to the payment to the Bidder of any amount in excess of ninety (90) percent of the Bid Price, as and if revised, the Bidder shall deliver to the Owner in duplicate, on forms approved by the Administrator, releases of all liens and of rights to claim any lien from manufacturers, materialmen and subcontractors who

have furnished materials or services for the construction of the Project and a certificate in a form satisfactory to the Administrator, to the effect that all labor used on or* for the Project has been paid and that all such releases have been submitted to the Owner, and the Owner shall deliver to the Administrator for his approval one of the duplicates of each release and certificate."

The Exhibit "D" referred to in the stipulation, is a letter from Marble Construction Company, Inc. to Farmers Electric Cooperative, Inc., dated April 19, 1963, which is copied as follows:

"MARBLE CONSTRUCTION COMPANY, INC.
P.O. Box 18092
Dallas 18, Texas
April 19, 1963

Mr. Joe Lytle
Farmers Electric Cooperative, Inc.
Greenville, Texas
Dear Mr. Lytle:

Project Tex–67, Rains-Rockwall
Headquarters Building

This letter will serve as our request and your authority to mail all future payments now due or to become due under our contract for the construction of the captioned project directly to Trinity Universal Insurance Company, P. O. Box 5028, Dallas 22, Texas, Attention Mr. Henry Yates.

In addition, we hereby waive and release all right, or claim of right, in and to any and all contract balances, including earned by unpaid estimates and earned retained percentages, and hereby assign to Trinity Universal Insurance Company, our surety, any right or rights we may have to request additional compensation for work already performed but not included in payments to date.

This letter is to be considered irrevocable without the written consent of Trinity Universal Insurance Company.

Very truly yours,
MARBLE CONSTRUCTION COMPANY, INC.
BY: /s/ George E. Marble
George E. Marble, President"

---

We agree with appellant that the issue presented by this appeal is narrowed to the question: Who has the better right to the contract funds, the Surety, who has completed the building pursuant to its suretyship application, and thereby produced the fund which is deposited in the court by the interpleader, or a garnishing creditor?

Appellee asserts (1) that contractor never made default, as contemplated by the construction contract and suretyship agreement; (2) that the voluntary decision of the Surety to lend its financial assistance to the contractor under the circumstances herein can create in the Surety no other or greater right than the relationship of debtor and creditor; (3) that Surety must rely upon the alleged assignment, Exhibit "D", above, and since no claim is advanced that the assignment of the proceeds of the contract was recorded in compliance with

the terms of Art. 260–1, V.A.C.S., it is not protected by such assignment. We find ourselves unable to agree with appellee with any of these contentions.

In determining the questions presented here we must be bound by the express stipulation of facts. It was therein agreed that contractor "became financially unable to proceed further in the performance of the contract." It was also agreed that Surety "in carrying out its obligations under the bond would assume responsibility for the completion of said contract." For reasons assigned it was decided to handle the completion of the job in a manner which would give rise to the least adverse publicity and increased financial obligations. The stipulation expressly provided that the fund herein involved represented the retained percentages due under the contract. When the stipulation is reviewed within its four corners we think there was such a default on the part of the contractor as contemplated by the agreement and that the Surety's independent rights to the fund is founded on its suretyship relationship as such. The rights of the surety in this case, as revealed by the stipulation of facts, does not depend upon an independent assignment, such as Exhibit "D", and therefore we are not here concerned with the application of Art. 260–1, V.A.C.S., nor the rule correctly stated in Parker Square State Bank v. Triangle Supply Co., Tex. Civ.App., 364 S.W.2d 418.

That a surety has an independent right growing out of its relationship as such to require the retainage to be applied to contract obligations is well settled by the courts, both federal and state. Thus in Prairie State Nat'l Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, the United States Supreme Court said:

"The law upon this subject seems to be, the reserved per cent. to be withheld until the completion of the work to be done is as much for the *indem-*

*nity of him who may be a guarantor* of the performance of the contract as *for him for whom it is to be performed.* And there is great justness in the rule adopted: Equitably, therefore, the sureties in such cases are entitled to have the sum agreed upon held as a fund out of which they may be indemnified, and, if the principal releases it without their consent, it discharges them from their undertaking." (Emphasis supplied.)

For additional authorities see Republic Nat'l Bank & Trust Co. v. Massachusetts Bonding & Ins. Co., Fifth Circuit, 68 F.2d 445; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 405, 28 S.Ct. 389, 52 L.Ed 547; Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190; American Employers' Ins. Co. v. Roddy, Tex.Com.App., 51 S.W.2d 280, opinion approved by the Supreme Court.

It is further well settled in our law that the surety whose funds go to discharge contractor's obligations is thereby subrogated to the rights of the owner to apply the contract balances to the completion of the project and payment of bills incurred in that connection. American Employers' Ins. Co. v. Roddy, Tex.Com.App., supra; O'Neil Engineering Co. v. First Nat'l Bank, Tex.Com.App., 222 S.W. 1091; Pacific Indemnity Co. v. Grand Avenue State Bank, Fifth Circuit, 223 F.2d 513; Employers' Casualty Co. v. Rockwall County, 120 Tex. 441, 35 S.W.2d 690.

The rights of the Surety in this case are based upon its payment of the debt of another, and not upon any declaration of default by the owner. Simply stated, the right of subrogation of the Surety is founded solely upon the equitable principle of having paid, pursuant to a bound obligation so to do, what in equity should have been paid by the contractor. Thus, in 53 Tex.Jur.2d 434 it was said:

"The doctrine of subrogation is given a liberal application, and is broad

enough to include every instance in which one person, *not acting voluntarily, has paid a debt for which another was primarily liable* and which in equity and good conscience should have been discharged by the latter. The doctrine is particularly strong in this state." (Emphasis supplied.)

The Surety in this case cannot be said to be a mere voluntary money lender, as contended by appellee. As above stated, the genesis of appellant's rights and responsibilities is the suretyship agreement itself. According to the stipulation of facts the contractor became financially unable to proceed further in the performance of his contract and this fact was made known to the Surety which elected to carry out its suretyship obligation in the manner set forth in the stipulation. No overt declaration of default was essential. In Employers' Casualty Co. v. Rockwall County, 120 Tex. 441, 35 S.W.2d 690 there was no declaration of default. The court said:

"It was shown without dispute that the contractors allowed their bills for labor and material in the performance of their contract to go unpaid, in violation of the terms thereof, informing the surety company that they were unable financially to proceed further with the performance of the work, and demanding that it take over the job, which it did, and completed the same to the satisfaction of the county.

"We have no difficulty in reaching the conclusion that the evidence established, as a matter of law, there was an abandonment or default on the part of the contractors. Their acts and conduct constituted a clearcut default, justifying the surety company in making the effort to minimize its loss by assuming performance of the contract."

The contractor in this case obviously had no right to the contract funds retained by it, and the bank, appellee herein,

as its garnishment creditor, could acquire no greater rights into said fund. In re William P. Bray Co., D.C., 127 F.Supp. 627; United States v. Yates, Tex.Civ.App., 204 S.W.2d 399; F. H. McGraw & Co. v. Sherman Plastering Co., D.C., 60 F.Supp. 504.

For the reasons herein assigned we are of the opinion, and so hold, that appellant was not a mere moneylender and therefore dependent upon an assignment, as contended by appellee, but that it was entitled to the proceeds of the fund in question by virtue of its contract of suretyship, the performance of which resulted in a subrogation granting to it rights superior to that of appellee. It follows that the trial court erred in awarding the proceeds of the fund to appellee.

Our judgment to be rendered here is governed by the opinion of the Supreme Court in Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 400, wherein the court said:

"But when, as in this case, both parties file motions for summary judgment and one such motion is granted, then the trial court's judgment becomes final and appealable, and on appeal the Court of Civil Appeals should determine all questions presented. If reversible error is found, the court should render such judgment as the trial court should have rendered, Rule 434."

To the same effect see Gulf, C. & S. F. Ry. Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492; Catholic Charities of the Diocese of Galveston, Inc. v. Harper, 161 Tex. 21, 337 S.W.2d 111. Accordingly, we hold that the trial court should have rendered judgment for appellant and we, pursuant to Rule 434, Texas Rules of Civil Procedure, reverse the judgment of the trial court and here and now render judgment in favor of appellant.

The judgment of the trial court is

Reversed and rendered.