**FIRST HUTCHINGS–SEALY NATIONAL BANK OF GALVESTON, Appellant,**

**v.**

**AETNA CASUALTY & SURETY COMPANY et al., Appellees.**

**No. 16588.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 11, 1975.

Rehearing Denied Jan. 8, 1976.

Levy, Levy, Coughlin & Withers, Lawrence M. Coughlin, Galveston, for appellant.

Bailey, Williams, Westfall & Fowler, James A. Williams, Dallas, for appellees.

EVANS, Justice.

We are here concerned with the priority of a surety under a contractor's payment and performance bond as against a bank which is the holder of a perfected security interest under assignment from the contractor.

On March 16, 1971, Central Texas Plastering Company, Inc., d/b/a Aztec Construction Company, a business owned by John M. Dooley (hereinafter collectively referred to as Contractor), entered into a construction contract with the Board of Regents of the University of Texas System (hereinafter referred to as Owner), for the construction of a warehouse for the U. T. Medical Branch at Galveston, Texas. On the same day the Aetna Casualty & Surety Company (herein referred to as Surety), issued a $450,850.00 payment and performance bond designating itself as surety, the Contractor as principal and the State of Texas as obligee. On or about April 16, 1971, appellant, First Hutchings-Sealy National Bank of Galveston (herein referred to as Bank), made a loan to Contractor in the principal amount of $60,000.00 and obtained a security agreement from the Contractor assigning his interest under the construction contract to the Bank. The Bank's security interest was duly perfected on April 19, 1971. The Contractor commenced the work and in May 1971, its first estimate in the sum of $35,887.50 was submitted. Upon certification of the Owner's architect this estimate was paid in part to the Contractor and in part to the Bank. According to the agreed statement of facts, "on or about" June 7, 1971, the Contractor submitted a second estimate in the amount of $48,-711.60, for work previously completed, which was revised to the sum of $47,973.60 and certified by the architect. The agreed statement also reflects that "on or about" that same date the Contractor was found to be unable to perform any further contract obligations and called upon the Surety to perform in its place. No payment was made of the second estimate by the Owner and on June 8, 1971, the Surety assumed control over the completion of the contract and subsequently did complete the work, spending the total sum of $471,457.13. Thereafter the Owner paid the balance of the contract funds to the Surety in the total amount of $407,584.50, being the balance of the contract funds after all additions, deductions and penalties were appropriately applied. The Contractor never paid the Surety the amount of its loss under the contract.

The Contractor also defaulted in the payment of its note to the Bank, leaving a balance due on the note in the amount of

$15,996.39. The Bank brought this suit on the note against Central Texas Plastering Company, Inc., d/b/a Aztec Construction Company, John M. Dooley, the University of Texas System and Aetna Casualty & Surety Company. The case as to the Contractor was severed and the Bank was granted a summary judgment against those defendants. The trial court, sitting without a jury and upon an agreed statement of facts, entered a take-nothing judgment as to the remaining cause of action brought by the Bank against the Surety and the Owner. We affirm.

The payment and performance bond issued by the Surety was executed pursuant to the provisions of Article 5160, Tex.Rev. Civ.Stat.Ann. Section E of this article provides:

### Termination of Contract

"E. In the event any contractor, who shall have furnished the bonds provided in this Statute, shall abandon performance of this contract or the awarding authority shall lawfully terminate his right to proceed with performance thereof because of a default or defaults on his part, no further proceeds of the contract shall be payable to him unless and until all costs of completion of the work shall have been paid by him. Any balance remaining shall be payable to him or his surety as their interest may appear, as may be established by agreement or judgment of a court of competent jurisdiction."

■ The provisions of this statute are to be read into the construction contract to the same extent as if they we.e expressly incorporated therein. *Massachusetts Bonding & Ins. Co. v. City of Grapeland,* 148 S.W.2d 1006, 1009 (Tex.Civ.App.—Galveston, 1941, rev'd in part on other grounds, 139 Tex. 310, 162 S.W.2d 657).

In *O'Neil Engineering Co. v. First Nat. Bank of Paris,* 222 S.W. 1091 (Tex.Com. App., 1920, judgment approved), an engineering company had executed a surety bond and had assigned to the surety all amounts which might be due it under the contract by the Board of Road Commissioners. Subsequently the engineering company made an assignment to the bank of a portion of the monthly installments to which it would be entitled under its contract with the Board. After completing a portion of the work, the Board of Commissioners approved the engineering company's estimate for a payment under the contract and a warrant for such amount was drawn on the bank's special fund in favor of the engineering company. After the passage of several days, the bank gave notice to the Board of its assignment and demanded delivery of the warrant. On that same day, but subsequent to the bank's demand, the engineering company appeared before the Board and gave notice that it would not be able to carry out the contract and has assigned its contractual obligations to its surety. The Board delivered the warrant to the surety company. The Commission of Appeals upheld the Board's payment to the surety. It held that the estimate constituted a "debt due" but one which had not matured at the time the contractor abandoned the work; that the surety's rights "immediately fastened upon" the amount retained by the Board to the exclusion of any subsequently given assignment, and that the bank's assignment was "subject to the stipulations contained in the contract, and . . . to the rights of the parties under that contract as they might arise in law." The court stated:

"The rights of the board to retain this estimate against the contractor became fixed upon his abandonment of the contract. This right existed from the inception of the construction contract; the surety company was in equity subrogated to the then existing rights of the board. As the surety accepted its responsibility to, and did proceed in, the performance of the contract, it was vested, both under the application assignment and by subrogation, to a prior right in the fund to that

of the bank. The bank's assignment postdated the application assignment, and postdated the equitable rights existing in the board and subject to attach to the fund. *Hess & Skinner Engineering Co. v. Turney,* 110 Tex. 148, 216 S.W. 621. What occurred on August 8th gave rise to the rights of the board and of the surety company which related back to, and dated from, the inception of the construction contract." [222 S.W. 1094]

In the case before us, the trial court could have concluded from the record that the Contractor was not entitled to demand, prior to default and as matured and absolute right, payment of funds retained by the Owner which were required to complete the contract. The Surety, whose funds were required to fulfill the Contractor's obligation under the contract, had a right of subrogation under the Owner which was not dependent upon assignment of a security interest by the Contractor. *Deer Park Bank v. Aetna Ins. Co.,* 493 S.W.2d 305 (Tex.Civ.App.—Beaumont, 1973, no writ); *Trinity Universal Ins. Co. v. Bellmead State Bank of Waco,* 396 S.W.2d 163, 168 (Tex.Civ.App.—Dallas, 1965, writ ref'd n. r. e.); *O'Neil Engineering Co. v. First Nat. Bank of Paris,* supra. The Bank had no greater right to the disputed funds than did its assignor, the Contractor. *Deer Park Bank v. Aetna Ins. Co.* at p. 308 supra; *Travelers Indemnity Co. v. Synder Nat. Bank,* 361 S.W.2d 926, 928 (Tex.Civ.App.—Eastland, 1962, writ ref'd n. r. e.); *City of Dallas v. Conley, Lott, Nichols Machinery Company,* 172 S.W.2d 989, 990 (Tex.Civ.App.—Dallas, 1943, writ ref'd). The Contractor, upon default of the contract, forfeited his right to any further proceeds under the contract unless and until he paid the costs of completing the work. Since there were no funds retained by the Owner other than the funds which were required to complete the work under the contract, there were no monies remaining in the hands of the Owner which were subject to the Bank's assignment from the Contractor.

The Bank relies on *Transamerica Ins. Co. v. Texas Warrant Co.,* 405 S.W.2d 66 (Tex.Civ.App.—Austin, 1966, writ ref'd n. r. e.), wherein the State of Texas, after the contractor's default, paid funds to the bank which had been "due" to the contractor prior to default. The court held that the subrogation rights of the contractor's surety were inferior to the bank's right under its assignment. The court based its opinion upon a 1957 amendment to Article 260–1, Tex.Rev.Civ.Stat.Ann., which statute has since been repealed by and incorporated in the Business & Commerce Code. Since the court did not refer to Article 5160, we surmise that under the facts of that case the bank was paid funds which, prior to default, represented a matured debt which was not subject to the surety's right of subrogation. See *Massachusetts Bonding & Ins. Co. v. Farmers & Merchants State Bank,* 139 Tex. 310, 162 S.W.2d 657 (1942). Under the provisions of Article 5160, Tex. Rev.Civ.Stat.Ann., the defaulting contractor, or one to whom he has assigned his rights under the contract, is entitled to "no further proceeds" under the contract "unless and until all costs of completion of the work shall have been paid by him." In our opinion, neither the holding in the *Transamerica* case nor the provisions of the Business & Commerce Code afford a basis for a contractor, or its assignee, to demand funds retained by an owner which are required for the completion of the work, unless the contractor, prior to default, had a matured right to payment of such funds. *Deer Park Bank v. Aetna Ins. Co.,* supra; see also *Standard Acc. Ins. Co. v. Federal Nat. Bank,* 112 F.2d 692, 694 (10th Cir. 1940); *General Electric Supply Co. v. Epco Constructors, Inc.,* 332 F.Supp. 112, 115 (S.D. Texas, Houston, 1971).

The judgment of the trial court is affirmed.