**STAGAL OIL CO. et al. v. BARTHOLOMEW.**

No. 10756.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 21, 1940.

Rehearing Denied Nov. 27, 1940.

Johnson & Rogers, of San Antonio, for appellants.

Moursund, Ball, Moursund & Bergstrom, of San Antonio, for appellee.

MURRAY, Justice.

Appellee, George P. Bartholomew, instituted this suit on September 24, 1938, against Stagal Oil Company, a corporation, and Ramona Oil Company, also a corporation, seeking to recover the sum of $1,193.12 upon an open account, and to recover further sums evidenced by notes as follows: $1,000, $300, $480, $805, $500.

The trial began to a jury, but at the close of the testimony Bartholomew made a motion for an instructed verdict in his favor, which was by the court granted and judgment rendered allowing a recovery in full upon each of the notes, and a partial recovery in the sum of $697.72 upon the open account.

From this judgment Stagal Oil Company and Ramona Oil Company have prosecuted this appeal.

Appellants first complain and contend that the court erred in instructing a verdict in favor of appellee on the C. T. Staats note in the principal sum of $500.

The liability of the appellants on this note was arrived at because, as contended by appellee, the appellants had paid a divi-

dend to C. T. Staats upon his stock in the Ramona Oil Company, after they had notice that Staats had assigned all such dividends to appellee, to secure the payment of the $500 note in suit.

The record shows that C. T. Staats was a stockholder in the Ramona Oil Company from the time of its incorporation. The books of that corporation further show that Staats has been indebted to the corporation from the beginning in a sum far in excess of $500. In February, 1937, the Ramona Oil Company declared a dividend as of some time in December, 1936. This dividend was not paid in cash but by note. The note to Staats was in excess of $500; it had a blank endorsement on the back of it in the following language: "I hereby assign this note to the Ramona Oil Company in payment of the unpaid balance due from me on the purchase price that was to be paid for the capital stock that I have received." Staats endorsed the note back to the company and received credit for the amount thereof. The transaction resulted ultimately to nothing more than giving Staats a credit for the amount of a declared dividend upon his indebtedness to the company.

■ Bartholomew was not entitled to have his note paid from dividends declared on stock held by Staats so long as Staats was indebted to the company, and such indebtedness existed before the company was notified of the assignment of dividends to Bartholomew. Shambeck v. Johnson, Tex. Civ.App., 3 S.W.2d 883; Revised Civil Statutes, Arts. 569 and 570. Appellee contends that the charge for the purchase price of stock was not a proper charge against Staats upon the books of the company. We will discuss this matter later.

■ Appellants next contend that all dividend notes were issued in violation of the statutes, Art. 1083a, Penal Code, Vernon's Ann., and were therefore illegal and void, as the appellants did not have on hand at the time of the declaring of the dividends sufficient assets to justify such dividends.

The note for $480 executed by the Stagal Oil Company and the note for $805 executed by the Ramona Oil Company were dividend notes authorized in February, 1937, but to be issued as of December, 1936. There was evidence sufficient to raise a jury question as to whether or not appellants had on hand, either in December, 1936, or February, 1937, sufficient assets to justify these dividend notes. Article 1083a of the Penal Code makes it unlawful to issue dividends unless the corporation has on hand actual earnings sufficient to meet such a dividend. If the notes were actually intended as unqualified dividend notes, and if the jury had found appellants did not have actual earnings out of which to pay such dividend, then such notes would have been illegal and void and especially while in the hands of an original payee. The trial court erred in instructing a verdict for appellee for the amount of principal, interest and attorney's fees provided for in these two notes. 10 Tex.Jur. p. 185, § 107.

■ Appellants next contend that the $1,193.12 item sued for upon open account was barred by the two-year statute of limitation. We sustain this contention. The open account was clearly more than two years past due at the time of the filing of this suit and was therefore barred by the two-year statute of limitation, Art. 5526, subd. 4, R.C.S.1925, unless it had been revived by an agreement in writing signed by the party to be charged. Art. 5539, R.C.S. 1925, provides: "When an action may appear to be barred by a law of limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby."

A portion of a letter dated June 27, 1936, was introduced into evidence by appellee in the following manner:

"Q. Now, Mr. Bartholomew, I hand you a letter bearing date June 26, 1936, from the Stagal Oil Company addressed to you. I will ask you to state whether or not you received such a letter from the Stagal Oil Company, bearing such a date? A. Yes, I received that."

Counsel for plaintiff then stated:

"Four sentences are offered from this letter from the defendant, Stagal Oil Company to the plaintiff, as an admission against its own interest:—

"In 1935 you advanced to the Stagal Oil Company $1,143.12. In 1936 you advanced $200.00. These advances were not covered by notes. From these advances we have deducted $150.00 which was paid to John E. Clark for a contribution for fuel oil to the drilling of the Ada Williams tract. The balance due you is $1,193.12."

The defendants offered in evidence the remaining portion of the paragraph of the letter from which the plaintiff had read, which reads: "Offsetting this is the purchase price of the stock which comes to $1,600.00. If you wish to have your stock fully paid up we could take credit on one of the notes for $406.88."

The record fails to show whether or not the letter was signed, and if so by whom. This does not meet the requirements of article 5539, supra, and was therefore insufficient to toll the statute of limitation. The court erred in instructing a verdict for any part of this open account.

Appellants next contend that in any event they were entitled to off-set against any claim of appellee the amount of indebtedness shown by the books of the corporation to be due them by appellee.

When the books of the corporation were set up there was entered a charge of $20,000 against the stockholders of the Stagal Oil Company and $7,500 against the stockholders of the Ramona Oil Company. Appellee's pro rata part of this charge was $1,600 in the Stagal Oil Company and $1,895.92 in the Ramona Oil Company. Appellee contends that when the corporations were chartered the stock was fully paid by transferring to the companies certain oil leases, and that the stockholders were never indebted to the companies as indicated by the books. However, there is evidence that the stockholders did agree to become liable for these amounts and to pay same into the corporations in order to give them a working capital.

Appellee, Bartholomew, wrote a letter to L. M. Kniffin on May 5, 1937, in which he stated:

"From your letter to John dated February 20, 1937, (copy of which was not received by me until April 5, too late to comment on same before you filed your Income Tax Return) and from the December 31 balance sheet, it is apparent that the value of the company's lease has been written up by $10,000 and the amount due from the subscribers reduced by a like amount. I have not been consulted in this matter although I am a director, a shareholder and a creditor and I must record my objection to this procedure in each capacity.

"The lease was assigned to the company at its inception and stock was issued to the extent of $20,000 to develop the property. The obligation to subscribe to said amount of stock subsists until it is met and can not be cancelled by the revaluation of assets of an insolvent company. The company will apparently be unable to meet its obligations and it is at present unable to meet its obligations and in the face of this, steps are taken to dissipate its assets i. e., by cancelling the amounts due from shareholders by giving a fictitious value to a lease which has always been the property of the corporation and which at the time of the writing up was demonstrated to be of little value."

Concerning this matter J. W. Kniffin testified as follows:

"Q. What if anything was said as between you and him (referring to Bartholomew) with reference to whether or not the $20,000, or some sum of money, would be paid in as capital account in the Stagal Oil Company? A. I don't recall the details of the conversation, but Mr. Bartholomew had always insisted from the incorporation of the company, that that amount be fully paid.

"Q. What amount? A. $20,000 for each company.

"Q. Paid in cash? A. $20,000 for the Stagal Oil Company paid in cash.

"Q. Do you mean in addition to the leases that were transferred? A. In addition to the lease.

"Q. What did you say to him with respect to that? A. I had previously objected to that.

"Q. In the charter here of the Stagal Oil Company, it shows you subscribed to stock amounting to $9,340.00. A. That's correct.

"Q. Now, pursuant to the understanding you had with Mr. Bartholomew, did you pay in to the company $9,340.00? A. I did."

Continuing, the witness says: "I paid in ninety three hundred some odd dollars in cash, with the exception of the dividend note, which I endorsed back to the company in payment for the balance of my stock and the dividend note was credited on my stock account."

Appellee explains these matters away by stating that after he sold his stock and ceased to be interested in the corporations as either an officer, director, or a stockholder, he discovered he had been under a misapprehension as to these matters during the time he was connected with the corporations. The weight to be given this explanation was a matter for the jury to pass upon. The evidence was sufficient to raise a jury question as to whether or not

the stock accounts were binding obligations. Appellee contends that these accounts were barred by the two-year statute of limitation. They were only plead herein by appellants as a set-off against appellee's claims against the companies, and under such circumstances the statutes of limitation are inapplicable. 28 Tex.Jur. p. 134, § 53; Dallas Joint Stock Land Bank v. Sneed, Tex. Civ.App., 91 S.W.2d 1102.

The judgment will be reversed and the cause remanded.