GULF COAST FACTORS, INC., Appellant,

v.

HAMILTON SUPPLY CORPORATION, Appellee.

No. 14496.

Court of Civil Appeals of Texas.

Houston.

March 25, 1965.

Rehearing Denied April 15, 1965.

Louis H. Beard, Wells, Duncan & Beard, Beaumont, and C. Anthony Friloux, Jr., Houston, of counsel, for appellant.

Charles Crady, III, Houston, and John A. Embry, Jr., Houston, of counsel, for appellee.

COLEMAN, Justice.

This is a suit on an account. The trial court withdrew the case from the jury and rendered judgment that the plaintiff Gulf Coast Factors, Inc., take nothing as to the defendant, Hamilton Supply Corporation. Judgment was rendered in favor of the plaintiff as to the defendant, Sonom Company of Texas, Inc. Gulf Coast Factors, Inc. has appealed.

Sonom Company of Texas, Inc., was engaged in the business of selling at wholesale a certain protective coating material. Sonom entered into a factoring agreement with appellant whereby appellant agreed to buy Sonom's accounts receivable. The provisions of this agreement material to this controversy are:

"2. YOU HEREBY AGREE TO SELL AND ASSIGN TO GULF COAST FACTORS, INC. AS YOUR FACTOR, ALL OF YOUR ACCOUNTS RECEIVABLE THAT SHALL BE ACCEPTABLE TO US. It is clearly understood that you will submit to us each and every account receivable during the period covered by the terms of this contract, for our consideration and approval. The account and terms of sale shall be submitted to us for our credit approval; our credit approval may be withdrawn by us at any time before delivery of merchandise and/or materials.

"4. You agree to sell, assign and transfer to us all of your rights, title, and/or interest in the merchandise, and/or materials represented by said receivables and in all such merchandise and/or materials that may be returned by customers, as well as all your rights of stoppage in transit, replevin, and reclamation. On any such material which for any of the above reasons is defective, or not in conformity with the invoice or order, or where for any reason the merchandise is returned, you hereby agree to immediately pay us the full net value of the invoice for such returned merchandise and/or materials.

"5. You agree to provide us with an assignment of such accounts receivable purchased by us, on a form furnished by us, together with copies of your customers' invoices, and satisfactory evidence of shipment. All customers' invoices shall clearly state that same have been assigned and are payable to us only.

"7. You hereby warrant that the merchandise and/or materials sold will be accepted and retained by your customer without dispute as to price, terms, quantity, quality or for any other reason. You agree to notify us promptly in writing of all such disputes or claims and you agree to settle same at your own cost and expense. We, however, shall have the right at all times, with your consent, to adjust all claims or disputes with your customer upon such terms as you may desire and shall have the right to charge you with any cost or expense pertaining thereto. We shall have the right to charge your account with such claim or disputed item before or after the maturity date. Any cost incurred by us in such disputes, claims, or settlements shall be charged against you or your Reserve Fund.

"12. Any merchandise and/or materials returned to you or customers' re-mittances received by you pertaining to transactions between us shall be held by you as trustee for us, and such remittances are to be turned over to us immediately. We shall have the right to endorse your name on all remittances payable to you which relate to transactions between us."

Among other items factored with appellant by Sonom were Invoices 1024 and 1033 issued by Sonom to appellee in the amounts of $21,230.65 and $57,368.28 dated January 1, 1958 and February 17, 1958, respectively. Appellant contends that these invoices represent completed sales of merchandise, while appellee contends that the merchandise listed on the invoices was sent to them on consignment.

Before appellant would purchase an account from Sonom, it required that Sonom furnish the invoice, a purchase order, and a schedule of assigned receivable describing in detail the particular invoices to be sold. The instruments furnished concerning each of the two transactions in question were prepared on the same forms. On the front of the "Schedule of Assigned Receivables" form various invoices are described. On the back of the form there is an assignment contract to be executed by the assignor, and accepted by the assignee. This contract reads in part:

"We, the undersigned, for value received, * * * hereby sell, assign, transfer and set over to the factor * * * the accounts or claims set forth in the statement on the reverse side hereof, and all our right, title and interest in and to the same, and to all merchandise covered by said claims and accounts. * * *

"* * *

"We hereby represent and warrant as to each of said accounts or claims so assigned, that we are the owner thereof, that it is just, true and correct, and represents a bona fide sale; that the merchandise therein men-

tioned has been delivered to and accepted by the debtor therein named; that no payment has been made thereon; that there are no offsets or counter-claims thereto; that the terms of credit are as set forth therein, * * *."

At the time Invoices 1024 and 1033 were factored appellant received from Sonom the purchase orders issued by appellee. On each of the purchase orders the following statement is found: "The invoice for the above material will be paid in agreement with your letter dated November 25, 1957 by your Mr. David Ellis." This letter reads:

"Hamilton Supply Corp.
210 Magnolia
Galena Park, Texas

Re: Our Invoice No. 1014

Gentlemen:

In reference to our above invoice it is understood by this firm that the billing covered by the invoice shall be on a 45 day basis.

It is further understood that in event any material remains in your stock which is covered by above invoice such SONOM will be removed from your warehouse, upon your request, and the billing will be adjusted to cover only that material sold.

Yours truly,

(s) David Ellis
Sec-Treas.
    (seal)"

Paul M. Terrill acted for appellant when each of these accounts was purchased. He saw the reference to the letter of November 25, 1957, and, in answer to his inquiry, was told by a Sonom representative that it merely reduced the time of payment to 45 days. He asked to see the letter and was told that it was not immediately available, but that it would be furnished. He made no inquiry of appellee concerning the

letter, although he ascertained from appellee that the purchase order had been issued prior to the purchase of each account.

When these invoices were not paid, Terrill discussed the matter with a representative of appellee, who informed him that appellee considered the merchandise as having been received on consignment.

On March 18, 1958, at the request of appellee, the president of Sonom gave appellee the following letter:

"Hamilton Supply Corporation
210 Magnolia
Galena Park, Texas

Re: Our Invoices Nos. 1024 and 1033

Gentlemen:

It is understood that in the event any material remains in your stock which is covered by above invoices, such SONOM will be removed from your warehouse, upon your request, and the billing will be adjusted to cover only that material sold.

Yours very truly,

/s/ William H. Strous
William H. Strous
President"

On May 7, 1958, Terrill wrote the following letter to appellee:

"Hamilton Supply Corporation
210 Magnolia
Galena Park, Texas

Attn: Mr. Leon Smith

Gentlemen:

Mr. Schubert has informed me of your conversation with him last week regarding our account of $80,593.34 with your company.

It is true you mentioned to me over the phone, that you had a letter of special arrangement from Mr. Strous. I asked for a copy of this letter particularly because the invoices were past

due. I also explained that our purchase of these invoices from Sonom Co. was based on your purchase order issued to Sonom Co. of Texas.

Since the invoices were transmitted to your Vice President, Mr. M. L. Hadden, and no objection was made upon receipt, we feel we must look to your company for payment of our account of $80,593.34.

Yours very truly,

/s/ Paul M. Terrill
Paul M. Terrill
Vice President

PMT:ph
CC: Sonom Co. of Texas
Mr. W. Strous."

Thereafter, appellee sent the following letter to Sonom:
"Mr. William H. Strous
Sonom Co. of Texas
714 W. Shaw
Pasadena, Texas

Dear Sir:

In accordance with our agreement with you and Mr. Ellis as outlined in your letters and provided for in our purchase orders, we would appreciate your giving immediate consideration to the removal of the remaining consigned Sonom products from our warehouse.

We have approximately two thousand square feet of warehouse space involved. This merchandise can be stored however, in one thousand feet or less.

We trust that you can make satisfactory arrangements for storage of this merchandise, or that an agreement can be reached to the mutual benefit of all parties providing for storage and insurance charges after May 15, 1958.

"Very truly yours,

HAMILTON SUPPLY
CORPORATION

James Leon Smith, Comptroller
JLS:gj
cc: Gulf Coast Factors"

Appellee's pleadings contained a prayer that appellant be required to remove the merchandise from its warehouse, and there was testimony that all of the merchandise was available for delivery to appellant at appellee's warehouse.

Appellant contends that the trial court erred in rendering judgment for appellee because the evidence raised an issue of fact as to whether the transactions involving invoices Nos. 1024 and 1033 were sales and did not establish conclusively that the transactions were consignments.

The individuals representing Sonom and Hamilton in the preliminary negotiations culminating in the business relationship between the two companies did not testify at the trial. Appellee's motion for instructed verdict came at the conclusion of appellant's testimony, and appellee placed no witnesses on the stand. In addition to the writings described, appellant introduced into evidence business records of the companies involved showing that these two transactions were handled in a different manner than the other accounts factored. There was testimony that had Terrill seen the letter of November 25, 1957, he would not have factored the two invoices. The testimony shows that Invoice No. 1014 referred to in that letter was factored by appellant and that the account was paid by appellee. There was evidence that accounts for goods on consignment were not customarily factored; that purchase orders were not ordinarily issued for consigned merchandise without a prominent notation to that effect on the purchase order, and that there was no such notation on these purchase orders. Appellee paid, or was billed for, the freight on these orders, which was not customary when goods were consigned. There was testimony that a

percentage discount is not customary on consigned material, and the invoice allowed such a discount on these accounts. Ordinarily companies dealing in consigned materials operate under a written consignment agreement, and there was no such agreement between these companies. There was testimony that prior to the purchase of each of these two accounts, a Sonom representative told appellant that the invoice represented a completed sale.

It is appellant's theory that these circumstances raise a fact issue for the determination of a jury as to whether the transactions were sales or consignments.

In 6 Amer.Jur.2d, Assignments, § 102, the nature of the title acquired by an assignee is stated as follows:

"The assignee of a thing in action acquires at once an equitable ownership therein, so far as it is possible to predicate property or ownership of such a species of right. As a general rule he takes the subject of the assignment with all the rights and remedies possessed by or available to the assignor, and a claim good in the hands of an assignor which is good against the original debtor is ordinarily equally good and free from defenses in the hands of his assignee. On the other hand, the general rule is that an assignee of a non-negotiable chose in action acquires no greater right than was possessed by his assignor, and simply stands in the shoes of the latter.

"In an action on the claim assigned, the assignee is ordinarily subject to any setoff or counterclaim available to the obligor against the assignor and to all other defenses and equities which could have been asserted against the chose in the hands of the assignor at the time of the assignment."

■ There is nothing about a completed sales transaction that is inconsistent with a contractual right to return merchandise for credit on the account created by that transaction. The factoring agreement recognizes that merchandise sold by Sonom might be returned and provides that title to merchandise and materials returned by customers would vest in appellant and would be held by Sonom as trustee for appellant. The second paragraph of the letter of November 25, 1957 from Sonom to Hamilton clearly gives appellee the right to require Sonom to pick up unsold merchandise at appellee's warehouse and to credit the value of this merchandise on the bill for merchandise represented by invoices 1024 and 1033.

There is no pleading that the provision for the return of merchandise was included in the letter agreement as the result of fraud or mistake, or that it did not in fact constitute a part of the agreement between the parties binding on Sonom. While the terms of the agreement may have been misrepresented to appellant by Sonom, there was no such conduct on the part of appellee prior to the purchase of the accounts. Appellant has not pled waiver or estoppel.

■ While appellant has pled that the notation on the purchase orders referring to the letter was insufficient to put them on notice that appellee had a right to return merchandise for credit, it referred to terms of payment and was sufficient. In any event it is immaterial since appellee had a right to demand credit on the particular account from Sonom, and appellant stands in the shoes of Sonom. Appellee had the right to demand credit on the account in the hands of appellant. Art. 570, Vernon's Ann.Civ.St.; Feder-Gregg Shoe Co. v. Big Four Shoe Co., Tex.Civ.App., 284 S.W. 717; Stagal Oil Co. v. Bartholomew, Tex.Civ.App., 144 S.W.2d 1012, error dism.

■ Since appellee tendered back all of the goods listed on the two invoices, he was entitled to full credit on the accounts.

The judgment of the trial court is affirmed.