**DEER PARK BANK, Appellant,**

v.

**AETNA INSURANCE CO. et al., Appellees.**

No. 7464.

Court of Civil Appeals of Texas, Beaumont.

March 15, 1973.

J. P. Madole, Jr., Madole, Mease & Schwartz, Pasadena, for appellant.

James Wyckoff, Wyckoff, Russell & Dunn, Houston, Willard E. Dollahon, Asst. City Atty., Houston, for appellees.

DIES, Chief Justice.

The City of Houston (hereafter "City") and J. W. Construction Company (hereafter "Contractor") in April and May of 1965 entered into two contracts for the construction of storm sewers. Pursuant to Art. 5160, Vernon's Ann.Civ.St., performance and payment bonds executed by Aetna Insurance Company, as surety, were made a part of such contracts. On May 18, 1965 and on July 13, 1965, Contractor assigned to the Deer Park Bank any and all payments due it under these contracts. These were filed for record on July 14, 1965. On July 23, 1965, Contractor abandoned performance of these contracts. At this time, not only was the work not completed, but Contractor had unpaid obligations to suppliers of labor and materials. On demand by City, Aetna completed Contractor's obligations and paid all claims of all suppliers of labor and materials who had perfected their claims in compliance with Art. 5160, V.A.C.S. In discharge of such obligations, Aetna spent $254,154.83.

Until abandonment by Contractor, City had paid estimates of $50,089.17 to Bank as assignee. After default by Contractor, City withheld all further payments until the contracts were completed by Aetna, at which time City paid Aetna $136,481.07. At the time of default, Contractor was indebted to Bank in the amount of $61,845.-41, representing the unpaid balances of promissory notes to Bank.

Suit was brought by Bank against Aetna, City and Contractor. Contractor wholly made default and judgment was rendered

against him for the unpaid balance of his promissory notes. The controversy between Bank and Aetna and City was submitted to the court upon stipulated facts, whereupon the trial court rendered judgment for Aetna and City, from which Bank perfects this appeal.

Bank's points of error follow: (1) The court erred in concluding as a matter of law that, under the terms of the construction contracts and by operation of Art. 5160 § E, no further proceeds of the contracts were due or became due to Contractor because he abandoned performance and defaulted and the costs of completion were not paid by him. (2) The court erred in concluding that, as assignee of Contractor, Bank had no greater right in or to the contracts than does its assignor, Contractor. (3) The court erred in concluding that Aetna had an independent right as surety to require the contract retainages to be applied to contract obligations. (4) The court erred in concluding the Aetna, after discharge of Contractor's obligations, became subrogated to the rights of City to apply the contract balances to the completion of the projects and payment of bills. (5) The court erred in concluding that City properly paid the balances of the contracts to Aetna. (6) The court erred in concluding that Bank is not entitled as a matter of law to recover the amounts prayed for.

We overrule all these points of error and affirm the judgment of the trial court.

Art. 5160, § E, V.A.C.S. is as follows:

"E. In the event any contractor, who shall have furnished the bonds provided in this Statute, shall abandon performance of his contract or the awarding authority shall lawfully terminate his right to proceed with performance thereof because of a default or defaults on his part, no further proceeds of the contract shall be payable to him unless and until all costs of completion of the work shall have been paid by him. Any balance remaining shall be payable to him or his

surety as their interest may appear, as may be established by agreement or judgment of a court of competent jurisdiction."

The costs of completion by Aetna exceeded the unpaid balance on the contracts by a total of $117,673.76. Manifestly, Contractor had nothing to assign Bank. Bank can stand in no better shoes than its assignor, Contract. Travelers Indemnity Co. v. Snyder National Bank, 361 S.W.2d 926, 929 (Tex.Civ.App., Eastland, 1962, error ref. n.r.e.). Contractor "could not have recovered because when he defaulted no money was due him. The bank stood in the shoes of [Contractor] under their assignment." See also Kaker v. Giles, 269 S.W. 151, 153 (Tex.Civ.App., Fort Worth, 1924, dism.).

"While it is true that a debt having a potential existence may be the subject of an assignment, still such assignment is ineffectual in so far as the potential debtor is concerned until such potential debt becomes an actual debt." Alfalfa Lumber Co. v. City of Brady, 149 S.W. 204, 205 (Tex.Civ.App., Austin, 1912, no writ).

Gulf Coast Factors, Inc. v. Hamilton Supply Corp., 389 S.W.2d 341, 346 (Tex. Civ.App., Houston, 1965, no writ), quoting from 6 Amer.Jur.2d, Assignments § 102, holds:

" 'On the other hand, the general rule is that an assignee of a non-negotiable chose in action acquires no greater right than was possessed by his assignor, and simply stands in the shoes of the latter.' "

Appellant argues that the 1957 amendment to Art. 260–1 must be construed together with Art. 5160, § E. Art. 260–1 was repealed by the Uniform Commercial Code, effective June 30, 1966, which in turn was repealed by the Business and Commerce Code, effective September 1, 1967. This 1957 amendment redefined an account or account receivable to include any sum of money accruing to a contractor

for labor performed or material furnished. Art. 260–1, § 6 provides:

"Whenever any person, firm or corporation shall in good faith take a protected assignment of any account or accounts, which shall not have been satisfied, cancelled or released by the assignor, all creditors of, and all subsequent assignees, purchasers and transferees of or from the assignor shall be conclusively deemed to have received notice of such assignment, dating from the time of the filing for record of the notice of assignment hereinabove provided; and after such filing for record, no purchaser from the assignor, no creditor of any kind of the assignor, and no prior or subsequent assignee or transferee of the assignor, holding an assignment not protected, or holding an assignment under a notice of assignment subsequently filed for record, shall in any event have, or be deemed to have acquired, any right in the account or accounts so assigned or in the proceeds thereof, or in any obligation substituted therefor, superior to the rights therein of the assignee named in such prior protected assignment."

Appellant cites Transamerica Insurance Co. v. Texas Warrant Co., 405 S.W.2d 66 (Tex.Civ.App., Austin, 1966, error ref. n.r. e.) and University State Bank v. Gifford-Hill Con. Corp., 431 S.W.2d 561 (Tex.Civ. App., Fort Worth, 1968, error ref. n.r.e.). In *Transamerica,* contractor defaulted in the payment of labor and material bills on a contract dated March 18, 1963. The surety ultimately lost $23,530.22. Prior to the March, 1963 contract, as an inducement to the surety to execute the bonds, the contractor executed and delivered to the surety an indemnity agreement assigning the contract monies. Thereafter, on August 16, 1963, the contractor also assigned most of the amount "due" him on the contract to the Texas Warrant Company which complied with Art. 260–1. On August 28, 1963, this assignment was recorded. Contractor executed another assignment to its surety on August 30, 1963, by which it

again assigned all then existing accounts due or to become due. Here surety company complied with Art. 260–1. On August 30, 1963, contractor wrote State (the obligor) to pay all remaining contract monies to its surety. However, State, on September 10, 1963, paid Texas Warrant Company. The court held the State was correct because the subrogation rights of the contractor's surety were inferior to the holder of its assignment under Art. 260–1, saying, "It appears that the amended Act shows that the intent of the Legislature was to encourage interim financing by eliminating the preference held by the surety companies under the 1955 amendment." (405 S. W.2d at 68) The court does not discuss Art. 5160, § E.

*University State Bank* discusses the requirements of a protected assignment as provided by Art. 260–1; but again there is no discussion of Art. 5160, § E, nor are the facts there similar to ours.

So we get back to trying to reconcile the Legislature's intent in Art. 5160, § E and Art. 260–1. We cannot escape the plain language of Art. 5160, § E stating that when contractor defaulted, he was entitled to no further proceeds under the contract until all costs of the work were paid. In this case, by this time, there was no more owed by City, so an assignment—even prior—to Bank under Art. 260–1 was an assignment of nothing. The retainages of $9,467.40 (which City retained in accordance with the contracts) occupy the same status. After the requirements of Art. 5160, § E had been satisfied, Bank would have a protected assignment under Art. 260–1 on any money remaining. Here there was none and to give Bank the preference to these monies—as it here seeks— would be simply to repeal Art. 5160, § E, which this court has no authority to do.

In National Surety Corporation v. United States, 133 F.Supp. 381, 383, 132 Ct.Cl. 724 (1955), we find:

"We reiterate our former opinion that the equity of the surety company is supe-

rior to the rights of the bank acquired under an assignment, whether the surety's rights are derived from the discharge of its liability on a performance bond or on a payment bond. In Prairie State Nat. Bank [v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412], the surety had discharged its liability on a performance bond, and in Henningsen [v. United States Fidelity & G. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547], its liability on a payment bond.

"No one seems to deny that the rights of a surety on a performance bond are superior to the rights of a bank as the contractor's assignee. This is because, as held in the Prairie State Nat. Bank case, the surety is subrogated to the rights of the United States, and the United States had the right to use the money in its hands to complete the contract on the default of the contractor. Hence, the surety having completed the contract, it was entitled to the money. It was entitled to it as against the bank because its rights of subrogation arose at the time it executed the bond, which was prior to the assignment to the bank."

In United States v. Commonwealth of Pa., Dept. of Highways, 349 F.Supp. 1370, 1379 (E.D.Penna.1972), the court said:

"National had subrogation rights on each of the six contracts on which it was the surety on the labor and material bonds. The equitable doctrine of subrogation is derived from the civil law, and applies to persons, such are sureties, who have paid a debt due to a third party for which another was primarily answerable, and who pays the debt not as a volunteer but because he is secondarily liable for the debt."

Judgment AFFIRMED.

KEITH, Justice (concurring).

While I concur in the affirmation of the case, I do so upon grounds slightly differ-

ent from those advanced by Chief Justice Dies. Just as does my dissenting brother, I will confine my remarks to the "retained percentage" of the two contracts.

The contracts provided that City would deduct two percent of the monthly estimates of the value of the work performed by the Contractor during each month "as an agreed amount to be retained by said City as security that the work described herein will be completed in accordance with this agreement and the plans and specifications attached hereto." It further provided that "[w]hen the work provided for herein shall have been completed by said Contractor," the retainage would be paid to the Contractor.

Aetna received the retained percentages from City because it was subrogated to all of City's rights, not by virtue of any assignment from Contractor. Aetna, not the Contractor, completed the work. We do not have a question of priority involved. The Bank's assignment was valid so long, and only so long, as Contractor complied with the terms of his contract with City. Upon default, he forfeited his rights to any sums of money in City's hands which were then, according to the contract, to be applied to the completion of the contracted job. Had any sums remained after completion, Bank's assignment would have been effective. As is usual in such a case, the surety took a substantial loss and Bank's assignment was worthless.

In Travelers Indemnity Co. v. Snyder National Bank, 361 S.W.2d 926, 928–929 (Tex.Civ.App., Eastland, 1962, error ref. n.r.e.), it was held that since the contractor defaulted and the costs of completion were not paid by him, he was not entitled to the retainages. The court then made two significant holdings: (1) "The bank had no greater right to the disputed funds than Chastain [contractor] had." (2) "Chastain could not have recovered because when he defaulted no money was due him. The bank stood in the shoes of Chastain under their assignment." So it is here.

Although Art. 260–1 was not involved in the case of Trinity Universal Ins. Co. v. Bellmead State Bank, 396 S.W.2d 163, 168 (Tex.Civ.App., Dallas, 1965, error ref. n.r.e.), the portion of the opinion dealing with subrogation (syllabi 3 and 4) and the authorities therein discussed are applicable to the case at bar. The rule so announced is that generally prevailing throughout the nation. See annotations in 45 A.L.R. 380 (1926); 134 A.L.R. 738 (1941); and 164 A.L.R. 613 (1946).

Nor do I have any difficulty harmonizing the 1957 amendment to repeal Art. 260–1* with Art. 5160, § E. Before the 1957 amendment, the statute specifically provided that the word "account" should not include any sums of money accruing to a contractor for labor or material furnished on a construction contract where the contractor had furnished a performance bond. This was a statutory prohibition against assignment of such accounts and effectively prevented banks from engaging in interim financing in such area. The 1957 amendment made a change so as to include moneys accruing to such a contractor in the definition of "account", if the assignee took the necessary steps to record the assignment.

Thus, the 1957 amendment made it possible for Deer Park Bank to have a valid assignment from Contractor in this case—and to receive more than $50,000 from City upon Contractor's estimates *before* default. The amendment, however, did not say or infer that an owner should or must pay a defaulting contractor's assignee any sum of money to which the contractor himself was not entitled and could not recover from the owner.

Bank's reliance upon the *Transamerica Case,* cited in the majority opinion (405 S.W.2d 66), is misplaced. The Austin Court did not employ Art. 260–1 to create any rights or property interest in the assignee

that were not vested in the assignor. The Court merely held that the prior protected assignment of funds then due the contractor was valid and that the assignee was entitled thereto. In our case, there is no stipulation of any amount "due" or "payable" to the Contractor. On the contrary, the entire record in the case before us supports the trial court's finding that there were no sums due and payable to the Contractor at the time he walked off the job. A similar holding is to be found in Town of River Junction v. Maryland Casualty Co., (5th Cir. 1940) 110 F.2d 278, 281, interpreting the laws of Florida.

The *University Bank Case* (431 S.W.2d 561), relied upon by the Bank here, bears no resemblance to the case at bar. It was an interpleader case and the bank's assignor was an unbonded subcontractor. Again, as in *Transamerica,* sums were due the subcontractor for extra work agreed upon. The only surety in the case was the general contractor's surety which sustained no loss and claimed no part of the fund interpleaded. *University* has no application here.

The case being tried upon an agreed statement of facts, we are without power to draw any inference, or find any facts, not embraced in the agreement. Hutcherson v. Sovereign Camp. W.O.W, 112 Tex. 551, 251 S.W. 491, 492 (1923); White v. State, 329 S.W.2d 446, 449 (Tex.Civ.App., Dallas, 1959, error ref. n.r.e); Shoppers World, Inc. v. State, 373 S.W.2d 374, 375 [Tex.Civ.App., San Antonio 1963; affirmed, 380 S.W.2d 107 (Tex.1964)]. The only inference which the trial court could have drawn from such stipulation was that there was no money due and payable to the contractor when he defaulted; thus, *Transamerica* is inapposite.

Under the prevailing case law in this state, the surety and not the assignee bank became entitled to the retained percentages.

**310**

Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S.W. 621, 623 (1919); Employers' Casualty Co. v. Rockwall County, 120 Tex. 441, 35 S.W.2d 690, 692 (1931); Trinity Universal Ins. Co. v. Bellmead State Bank, supra (396 S.W.2d at 168); and Trinity Universal Insurance Company v. United States (5th Cir. 1967) 382 F.2d 317, 321.

The judgment of the trial court was correct and I join in the affirmation thereof.

STEPHENSON, Justice (dissenting).

I respectfully dissent. I would permit the Deer Park Bank to recover the $9,467.-40 retainages.

At the time Deer Park Bank made loans to Contractor, Art. 260–1, § 6, V.A.C.S., was in effect. That article permitted banks and other lending institutions to make interim construction loans and secure a protected assignment. In effect, that article provided that the lender, upon complying with the notice requirement, should have superior right to the funds assigned.

Deer Park Bank did everything required of it in order to secure the protection afforded by Art. 260–1. At the time of default, Deer Park Bank had advanced Contractor $61,845.41, which we must assume went into this job. Also, at that time, City had on hand $9,467.40 which we must assume Contractor had earned for the work he had performed to that point. In my opinion, justice demands that the Deer Park Bank should recover that money under the protected assignment it held. Transamerica Insurance Co. v. Texas Warrant Co., supra (405 S.W.2d 66) and University State Bank v. Gifford-Hill Con. Corp., supra (431 S.W.2d 561).

I am well aware that apparently no appellate court in this state has attempted to reconcile the conflict between Art. 260–1 and Art. 5160, § E, as none of the cases cited in the majority opinion attempt to do so. Possibly, with this dissent, the Supreme Court of this state will settle this matter.