**RIVER PRODUCTION COMPANY, INC., Plaintiff–Appellant,**

v.

**BAKER HUGHES PRODUCTION TOOLS, INC., Defendant– Appellee.**

No. 96–60035.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1996.

Thomas L. Kirkland, Jr., Steven Craig Panter, Kirkland & Barfield, Jackson, MS, for Plaintiff–Appellant.

Richard P. Salloum, Matthew Forte Powers, Franke, Rainey & Salloum, Gulfport, MS, for Defendant–Appellee.

Before REYNALDO G. GARZA, DeMOSS and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

River Production appeals from a decision of the United States District Court for the Southern District of Mississippi granting Summary Judgment in favor of the defendant Baker Hughes Production Tools, Inc. on River Production's claims of negligence, breach of contract, tortious breach of contract, and breach of both implied and express warranties. The district court found that there were no genuine issues as to any fact with regards to any of River Production's claims and that Baker was entitled to judgment as a matter of law. We find the lower court did not err in granting summary judgment on a majority of the issues. However, it did err in granting a summary judgment on one of River Production's negligence claims. Thus, we AFFIRM in part and REVERSE and REMAND in part.

## I. Facts and Summary of Proceedings

In May 1990, Plaintiff, River Production Company, Inc. ("River Production"), began operating an oil well known as the Hoyt and Hilda Forbes Number 1 (hereinafter "the well") in Marion County, Mississippi. About a year and 3 months after the beginning of the operation of the well, River Production discovered a hole in the production casing of the well. Shortly thereafter, Harry Taylor, one of the two co-owners of River Production, contacted Baker Hughes Production Tools, Inc. ("Baker") and informed it that a "squeeze job" needed to be performed on the well. A squeeze job entails pumping cement down the well hole so that it seeps into the perforations of the casing. However, prior to pumping the cement, a bridge plug is placed into the well bore below the location of the leak. If the bridge plug performs properly, cement should not flow past it. After a successful squeeze job, all leaks should be plugged and any remaining cement located above the bridge plug is cleaned out and the plug is withdrawn. The well can then continue production. This case arises from an unsuccessful squeeze job.

River Production sued Baker for breach of contract, breach of implied warranty, express warranty, negligent supervision, negligent performance, and tortious breach of contract. Baker moved for and the court granted summary judgment with respect to all of River Production's claims. River Production appeals from this summary judgment.

## II. Standard of Review

█ This is an appeal from a summary judgment. Therefore, the standard of review is de novo. *E.g., McMurtray v. Holladay*, 11 F.3d 499, 502 (5th Cir.1993). Summary judgment is proper when, viewed in the light most favorable to the nonmoving party, the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

## III. River Production's Negligent Performance Claim

█ It is undisputed that River Production leased the equipment needed to perform the squeeze job from Baker. In fact, it is undisputed that Baker sent an employee by the name of Ray Criess along with the leased equipment to the well. The central issue in this case is whether Criess actually performed any of the work on the squeeze job; in essence, whether Baker's alleged "gratuitous advice" rose to the level of an affirmative act, thus imposing a duty on it to perform as a reasonably prudent operator would perform.

█ A contract creates a reasonable duty of care in fulfilling one's contractual obligations. See *McKinnon v. Batte*, 485 So.2d 295, 298 (Miss.1986) (noting that people "may be liable in tort for failure to skillfully discharge their contractual obligation."). However, contracts are not the only way in which the law imposes a duty of care. Whenever a person does some act, the law imposes a duty upon that person to take reasonable care in performing that act. *Dr. Pepper Bottling Co. of Miss. v. Bruner*, 245 Miss. 276, 148 So.2d 199, 201 (1962). After a review of all the summary judgment evidence, we find that the evidence was sufficient to raise a genuine issue of material fact as to whether Ray Criess took affirmative actions at the well, imposing a duty on Baker to act in a reasonable manner. The record is replete with evidence to that effect.

Harry Taylor, one-half owner of River Productions, recalls telephoning Baker to employ its services to determine if there was a hole in the casing and, if so, to remedy the situation. Rec. Vol. I, pg. 121; Rec. Vol. I, pg. 123. In fact, Mr. Floyd Thibodeaux, an employee of Baker, recalls a conversation to the same effect: "Mr. Taylor called into our office and requested equipment and personnel to do the job." Rec. Vol. I, pg. 177. The very next day Baker sent Ray Criess to the well along with all the necessary equipment and Criess "immediately started to work to locate the leak and squeeze it off." Rec. Vol. I, pg. 195. Taylor states that Ray Criess "had control over where the bridge plug was to be set and how far—how he wanted to go about testing—coming up the hole testing." Rec. Vol. I, pg. 132. Among other things "Mr. Ray would get on the floor and he

would set the bridge plug." Rec. Vol. I., pg. 138. In essence, Taylor had "left everything up to Mr. Ray." Rec. Vol., pg. 137. "He was the expert that came down there. And I told him it was his job; whatever he recommended, to tell Jim, and go ahead and do it." Id.

There is ample evidence in the record to show that Baker took affirmative acts and had sufficient control, even in an advisory capacity, so as to find that the lower court erred in granting a summary judgment on this issue of Baker's negligence. Therefore, we must reverse and remand on the sole issue of River Production's negligent performance claim so that a jury can determine if Baker was negligent in undertaking affirmative actions at the well.

 However, before this decision can be completely disposed, it is important for us to address the invoice provisions from Baker which state that a "Customer will at all times have complete care, custody, supervision, and control of the work or well and the recommendations of Baker are only advisory." This provision does not excuse Baker from its duty to exercise reasonable care whenever it acts. It simply indicates that the invoices themselves do not impose a duty upon Baker. Further, even if the provision did purport to release Baker from liability for its own negligence, the provision could not effectively do so. Under Texas law, which governs the invoices [1], the provision would have to comply with the "fair notice" requirements in order to release Baker from its own negligence. *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507–509 (Tex.1993). One of these requirements is that the exculpatory provision be conspicuous; that is, "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Id.* at 508 (citing *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex.1972)). There is nothing on the face of the invoice drawing a reader's attention to a provision releasing Baker from its own negligence. Therefore, even if we construed the "supervision and control" provision as a release, the provision would not excuse Baker from its own negligence because the provision is not conspicuous.

### IV. Conclusion

In sum, we reassert our contention that there was sufficient evidence to find that the lower court erred in granting summary judgment on River Production's negligent performance claim. Accordingly, we REVERSE AND REMAND this sole issue and AFFIRM the lower court with respect to the remainder of its findings.

---

1. The invoices contain a choice of law clause providing they will be governed by Texas law.