**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 96-11214
_____

STATE BANK & TRUST COMPANY, DALLAS,

                                        Plaintiff-Appellant,

versus

INSURANCE COMPANY OF THE WEST,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas
Dallas Division

_____

December 29, 1997

Before REYNALDO G. GARZA, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellee Insurance Co. of the West (ICW), acting as surety, issued performance bonds on behalf of DRT Mechanical Corp. (DRT) —— a subcontractor —— on two construction projects. DRT had previously given Plaintiff-Appellant State Bank & Trust Co. (State Bank) a security interest in its construction tools, equipment, and inventory ("construction materials") as collateral for a loan. DRT defaulted on both the loan and its construction contracts, after which ICW used DRT's on-site construction materials to complete the

projects. State Bank brought a conversion action against ICW after it refused to compensate State Bank for use of the construction materials in which State Bank held a perfected security interest. State Bank appeals the district court's order granting summary judgment in favor of ICW. Concluding that the district court erred as a matter of law in its application of the doctrine of equitable subrogation, we reverse and remand.

I

FACTS AND PROCEEDINGS

State Bank loaned DRT $187,000 (Original Loan) in November 1991. DRT secured the Original Loan by pledges of personal property in the form of construction materials. State Bank perfected its security interest in the collateral by filing a Form U.C.C.—1 with the Texas Secretary of State. In July 1993, DRT, having paid down the Original Loan to an outstanding balance of $142,946.98, pledged additional tangible personal property that fell within the description of collateral in State Bank's earlier-filed U.C.C.—1. State Bank advanced DRT additional principal, increasing the outstanding balance to $172,950.98.

In February 1994, State Bank loaned DRT $300,000 (Defaulted Loan). To secure repayment of the loan, State Bank and DRT entered into a commercial security agreement pursuant to which DRT gave State Bank a security interest in "[a]ll inventory, chattel paper, accounts, contract rights, equipment, general intangibles and fixtures," owned by DRT together with "[a]ll attachments,

2

accessions, accessories, tools, parts, supplies, increases and additions" thereto.  DRT paid off the Original Loan with a portion of the proceeds of the Defaulted Loan.  The security interest created and perfected in connection with the Original Loan continued in connection with the Defaulted Loan, and the November 1991 U.C.C.–1 filing remained effective throughout the District Court's jurisdiction over this matter.

DRT entered into subcontracts with two general contractors on two different projects —— one with Clark-Morris Companies (Clark-Morris), in December 1993, and another with Young Enterprises, Inc. (Young Enterprises) in October 1994.  Each subcontract authorized the general contractor to use DRT's construction materials to complete its work on the project in the event it defaulted on its obligations.

ICW and its sister surety company, Independence Casualty and Surety Company, issued payment and performance bonds insuring completion of DRT's contractual obligations to Clark-Morris and Young Enterprises.  Under the terms of the performance bonds, the obligees were to complete the projects in the event DRT defaulted, and would be entitled to use DRT's construction materials for that purpose.

After construction of the projects had begun, DRT notified ICW of DRT's inability to complete the projects for which ICW had issued performance bonds.  At approximately the same time, DRT ceased making the required payments to State Bank on the Defaulted

3

Loan. Following receipt of DRT's acknowledgment of default, ICW took over the projects to complete them. Substantial work remained to be done on the projects, and ICW determined that using DRT's job site construction materials would provide the least expensive and most expedient means of completion. As DRT had not paid its suppliers for all its on-site inventory by the time ICW took over the projects, ICW had to pay the remaining balance on such inventory.

State Bank delivered a letter to DRT requesting that ICW (1) enter into an "Agreement of Rental;" (2) procure insurance covering the equipment and naming State Bank as loss payee; and (3) pay two months rent at $10,000 per month. DRT forwarded the letter to ICW, which refused to acknowledge State Bank's claim to a superior right to possess DRT's property. State Bank notified DRT of the acceleration of the loan and demanded that DRT assemble the collateral for delivery to State Bank.

DRT informed State Bank that some of the requested collateral — specifically, job site construction materials — remained in the custody of ICW. State Bank's president wrote to ICW demanding that it account for and assemble DRT's property and notify State Bank that it could recover such property, but ICW refused State Bank's demand. After completing the projects, ICW tendered what remained of DRT's construction materials to State Bank, but it declined ICW's offer to turn over the property.

State Bank brought a conversion action against ICW in state

4

court, which action was removed to the district court based on diversity of citizenship. State Bank filed a motion for summary judgment as to liability and ICW sought summary judgment disposition of the entire case. The district court denied State Bank's motion and granted ICW's, holding that, under the doctrine of equitable subrogation, ICW had a right superior to State Bank's to possess and use the collateral. State Bank timely appealed.

## II

## ANALYSIS

A. STANDARD OF REVIEW

A district court's decision to grant summary judgment is reviewed <u>de</u> <u>novo</u>, applying the same standards as the district court.[1] Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and shows that the moving party is entitled to judgment as a matter of law.[2]

B. APPLICABLE LAW[3]

In the typical suretyship arrangement, a surety bonds a contractor's performance of its contract with a project owner. If

---

[1]<u>Melton v. Teacher's Ins. & Annuity Ass'n of America</u>, 114 F.3d 557, 559 (5th Cir. 1997).

[2]<u>River Prod. Co., Inc. v. Baker Hughes Prod. Tools, Inc.</u>, 98 F.3d 857, 859 (5th Cir. 1996)(citing FED. R. CIV. P. 56(c)).

[3]The parties agree that Texas law applies in this diversity case; however, to the extent that Texas law does not address an issue, we look to federal law for guidance.

the bonded contractor defaults, forcing the surety to complete the performance, the completing surety "has an 'equitable right' to indemnification out of a retained fund."[4]  The surety is subrogated to the rights of the project owner/obligee so that the retained contract price inures to the completing surety's benefit.[5]  The rationale for equitable subrogation stems from the notion that those contract proceeds that are reserved for disbursement until the contract's completion are "as much for the indemnity of him who may be a guarantor of the performance of the contract as for him for whom it is to be performed."[6]

The completing surety's right of subrogation arises in equity, as an outgrowth of the suretyship relationship itself;[7] it is not

---

[4]Pearlman v. Reliance Ins. Co., 371 U.S. 132, 138, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962).

[5]See Trinity Universal Ins. Co. v. Bellmead State Bank of Waco, 396 S.W.2d 163, 168 (Tex. Civ. App. — Dallas 1965, writ ref'd n.r.e.) ("It is . . . well settled in our law that the surety whose funds go to discharge contractor's obligations is thereby subrogated to the rights of the owner to apply the contract balances to the completion of the project and payment of bills incurred in that connection.") (citations omitted).  The completing surety is subrogated to the rights of other parties to the bonded project as well.  A surety that fulfills a defaulting contractor's obligations is subrogated to the rights of (1) The contractor, insofar as it is due receivables, (2) the materialmen and laborers who may have been paid by the surety, and (3) the owner for whom the project was completed.  Nat'l Shawmut Bank of Boston v. New Amsterdam Casualty Co., 411 F.2d 843, 845 (1st Cir. 1969).

[6]Prairie State Nat'l Bank of Chicago v. United States, 164 U.S. 227, 239, 17 S.Ct. 142, 147, 41 L.Ed 412 (1896).

[7]Trinity, 396 S.W.2d at 168.

dependent on assignment, lien, or contract.[8]  As such, the surety's right of subrogation is not a security interest and thus is not subject to the filing requirements of U.C.C. Article 9.[9]

As noted, the district court held that by virtue of equitable subrogation ICW was entitled to use DRT's construction materials located at the project sites to complete the construction, notwithstanding State Banks's pre-existing, perfected security interest in those materials.[10]  In so holding, the court relied on Interfirst Bank Dallas v. United States Fidelity and Guar. Co. as controlling authority.[11]  The district court reasoned that (1)

---

[8]Interfirst Bank Dallas v. United States Fidelity and Guar. Co., 774 S.W.2d 391, 399 (Tex. App.— Dallas 1989, writ denied).

[9]Id. at 398; Shawmut, 411 F.2d at 845-46.

[10]Although equitable subrogation typically arises in the context of a surety's bonding a general contractor's performance of its obligations to the project owner, that ICW bonded a subcontractor's performance of its obligations to general contractors does not alter our analysis.

[11]774 S.W.2d 391 (Tex. App. — Dallas 1989, writ denied).  In Interfirst Bank, the surety bonded a subcontractor's performance of its contract with a general contractor.  Id. at 393.  The subcontractor then obtained a loan, as collateral for which it gave the lender a security interest in its accounts receivable.  Id. at 393-94.  The lender perfected its interest by filing.  Id. at 394. The subcontractor subsequently defaulted on its obligations and both the lender — seeking to realize on its collateral — and the surety — through equitable subrogation — claimed entitlement to undisbursed progress payments and retainages withheld by the general contractor.  Id.  The court held that the surety's rights to the contract proceeds were superior to the lender's perfected interest in the subcontractor's receivables because the surety's right to equitable subrogation is not a security interest within the purview of Article 9 of the U.C.C. and, as such, the lender could not gain priority over the surety by perfecting its interest in the contract proceeds.  Id. at 398-99.

7

there is no conceptual difference between permitting a surety to apply contract balances towards project completion and permitting it to use the defaulting subcontractor's tools, equipment, and inventory for the same purpose, and (2) because, under Interfirst Bank, a surety's equitable right to contract proceeds has priority over a secured creditor's right to execute on its security interest in the same proceeds, ICW's right to use DRT's construction materials has priority over State Bank's security interests in the same property.

On appeal, State Bank argues that surety priority under Interfirst Bank is limited to situations in which the surety and the secured creditor make competing claims to contract proceeds; that when, as here, the collateral on which the secured creditor seeks to execute is tangible personal property, equity does not entitle the surety to be equitably subrogated to its principal's rights in the property. In support of its argument, State Bank maintains that, as between the surety and an assignee of the contract proceeds, equitable subrogation gives the surety priority because the assignee's interest in the proceeds never becomes an actuality. The assignee's interest is derivative of the assignor/contractor's right to the proceeds.[12] Also, until the

---

[12]See Deer Park Bank v. Aetna Ins. Co., 493 S.W.2d 305, 306 (Tex. Civ. App. —— Beaumont 1973, n.w.h.) ("[T]he general rule is that an assignee ... acquires no greater right than was possessed by his assignor, and simply stands in the shoes of the latter."); Interfirst Bank, 774 S.W.2d at 397 ("[A]n assignee ... cannot take

8

assignor/contractor performs its contract, the assignor/contractor's right to the proceeds remains a mere potentiality. Consequently, urges State Bank, the assignee has no right to make a claim against the project owner/obligee until the contractor/obligor has performed.[13] State Bank observes that if the assignee could claim entitlement to the proceeds notwithstanding the contractor's default, the assignee would enjoy a greater right to the proceeds than would its assignor.

We agree that when tangible personal property — distinct from contract proceeds — is at issue, the rationale for elevating the surety over the secured creditor has no application. Unlike the contractor's inchoate or potential rights in the contract proceeds, the contractor comes into the construction contract with present and effective ownership and the right to possess and use its own tools, equipment, and inventory. If the contractor has previously given a creditor a security interest in these materials — even those subsequently acquired — the creditor's right to realize on its collateral is not contingent on the contractor's full performance of its obligations.

As the creditor's interest in its tangible collateral is not

---

greater rights than his assignor.").

[13]See Deer Park Bank, 493 S.W.2d at 306 ("While it is true that a debt having a potential existence may be the subject of an assignment, still such assignment is ineffectual in so far as the potential debtor is concerned until such potential debt becomes an actual debt.") (quoting Alfalfa Lumber Co. v. City of Brady, 149 S.W.2d 204 (Tex. Civ. App. — Austin 1912, no writ)).

derivative of the contractor's right to collect payment under its contract, the surety cannot claim an equitable right to possess and use its defaulted principal's construction materials to complete the project that the surety has bonded. In fact, granting such use at no cost would result in a windfall to the surety, who would thus avoid the anticipated expense of providing materials necessary for project completion.[14]

The courts that have considered this issue have held that secured creditors holding perfected security interests in a defaulting contractor's tangible personal property retain their priority over a completing surety's equitable claims.[15] ICW responds that these cases, and their rationale, are inapposite; that ICW is only claiming an equitable right to use DRT's property — not an outright ownership interest in it — whereas these cases concern competing claims to proceeds from the property's sale, i.e., ownership interests. ICW notes that it offered to turn over DRT's construction materials to State Bank after completing the project, but that State Bank refused. ICW argues that State Bank's security interest was still intact, so that if it believed that ICW

---

[14]State Bank draws attention to one court's conclusion that extending the doctrine of equitable subrogation to tangible personal property amounts to "nothing less than an appropriation of a secured creditor's collateral to reimburse the performing surety." Aetna Casualty and Sur. Co. v. J.F. Brunken & Son, Inc., 357 F. Supp. 290, 293 (D.So.Dak. 1973).

[15]Id.; United States Fidelity and Guar. Co. v. United Penn Bank, 524 A.2d 958 (Pa. Super. Ct. 1987), appeal denied 536 A.2d 1333 (Pa. 1987).

10

had damaged the property or that the property had otherwise decreased in value, State Bank should have brought a claim for such diminution rather than conversion.[16]

ICW cites no authority in support of its "right to use" argument. It justifies its position with nothing more than the bald assertion that "[f]undamental fairness dictates that the surety use the defaulting contractor's tools and equipment to minimize loss and expense," and that "to hold otherwise would deny ICW the right to minimize the cost of resolving DRT's default."

ICW's argument is misguided. The surety's right to contract proceeds flows not from cost minimization considerations but from "the common sense proposition that the contract retainage funds would never become available to any creditor unless the surety completed the project."[17] On the other hand, when collateral

_____

[16]In addition to suffering from the infirmities noted below, ICW's "right to use" argument fails to account for the inventories that were consumed in the projects' completion —— which inventories cannot be returned to State Bank —— as well as the equipment and tools, if any, whose economic lives were exhausted through ICW's use. Moreover, as State Bank notes, ICW's contention is inconsistent with the position it took in refusing DRT's and State Bank's requests to surrender the collateral. ICW gave no indication that its detention of the property was temporary and that it ultimately intended to surrender possession of the collateral. Rather, ICW claimed that its rights were "paramount to all others' including secured lending institutions" and that it had "paramount rights to the contract balances, and claims, and materials, and tools, and equipment on the job site." ICW did not offer to return that portion of the collateral which had not been either consumed in the projects or otherwise disposed of until five weeks after State Bank brought this action.

[17]In re Merts Equip. Co., 438 F. Supp. 295, 297 (M.D.Ga. 1977).

consists of tangible personal property, the surety's completion of the contract is not a condition precedent to the conception of the collateral itself; rather, the creditor who holds a perfected security interest in a contractor's tools, equipment, and inventory may execute on its collateral regardless of whether the contractor has performed its obligations to third parties. Thus, equity need not intervene to elevate the surety over the secured creditor, as "the surety has done nothing with respect to [the tools, equipment, and inventory] which raises up in the surety an equity superior to that of later judgment creditors."[18]

We hold that ICW obtained no equitable rights in DRT's construction materials by virtue of either its own contract with DRT or DRT's subcontracts with the general contractors, Clark-Morris and Young Enterprises. As subrogee of the general contractors, ICW has rights that are derivative of theirs and therefore can be no greater.[19] Inasmuch as State Bank perfected its security interest in DRT's property some two years before DRT entered into its subcontracts with Clark-Morris and Young Enterprises, State Bank's interest in the property takes priority over their unperfected, conditional assignments in the subcontracts. Likewise, State Bank has priority over ICW's after-acquired assignment from DRT in its performance bonds.

---

[18]United Penn Bank, 524 A.2d at 965 (quoting In re Merts 438 F. Supp. at 298).

[19]Guillot v. Hix, 838 S.W.2d 230, 232 (Tex. 1992).

12

III

CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is reversed and this case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.